MARTIN B. KRAFT *vs.* POLICE COMMISSIONER OF BOSTON.

Suffolk. March 4, 1991. - May 15, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Anti-Discrimination Law,* Termination of employment. *Police,* Discharge. *Public Officer. Civil Rights,* Immunity of public official. *Public Employment,* Police, Termination.

General Laws c. 151B, § 4 (9A), prohibits on an employment application questions or requests for information concerning an applicant's admission to any facility for the care and treatment of mentally ill persons, and no exception, waiver or governmental discretionary capacity was applicable to provide a basis for the discharge of a police officer who had untruthfully answered such prohibited questions. [157-159]

CIVIL ACTION commenced in the Superior Court Department on October 31, 1988.

The case was heard by *John C. Cratsley,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Kevin S. McDermott* for the defendant.

*Harold Lichten* for the plaintiff.

*Deborah Piltch,* for Disability Law Center, Inc., amicus curiae, was present but did not argue.

WILKINS, J. In December, 1982, in connection with his application for appointment as a Boston police officer, the plaintiff (Kraft) was required to complete two forms under oath. In each form, Kraft falsely stated certain information about his medical history. In one form, Kraft swore that he had never had any "nervous, mental, or emotional disorder of any sort," and failed to disclose, as the form required, that on five occasions between April, 1976, and March, 1978, he had voluntarily been a patient receiving psychological treatment in Veterans' Administration Hospitals. In the other

form, Kraft answered falsely that he never had had nervous system problems, nervous conditions, or a mental illness and that he had never been a patient in a hospital. If he had answered affirmatively and truthfully, the form asked for details.

In March, 1983, Kraft was appointed a Boston police officer. He completed his one-year probationary term. During the next several years Kraft received various commendations and had an unblemished record. In June, 1988, the defendant police commissioner terminated Kraft's employment as a police officer "for the stated reason that Kraft had failed to disclose his Veteran[s'] Administration Hospital admissions in his answers to application questions" on the two forms.

In asking questions of Kraft that sought information about his admission to a facility for the care and treatment of mentally ill persons, the commissioner violated G. L. c. 151B, § 4 (9A) (1988 ed.). That section provides in its second (and last) sentence, as set forth in the margin,[1] that no application for employment shall contain any question or request for information concerning an applicant's admission to any facility for the care and treatment of mentally ill persons, subject to an exception not relevant here.[2]

---

[1]"No application for employment shall contain any questions or requests for information regarding the admission of an applicant, on one or more occasions, voluntarily or involuntarily, to any public or private facility for the care and treatment of mentally ill persons, provided that such applicant has been discharged from such public or private facility or facilities and is no longer under treatment directly related to such admission."

[2]The first sentence of § 4 (9A) states that, unless the termination or refusal is based on a bona fide occupational qualification, an employer may not terminate from employment or refuse to hire a person because of his failure to furnish information regarding his admission to such a facility, provided that he has been discharged from the facility and can prove that he is mentally competent to perform the job for which he is applying or, presumably, the job from which he is to be terminated.

The Superior Court judge ruled that the department had failed to show how a past history of voluntary hospitalization for mental illness acted as a bona fide occupational qualification. The commissioner does not challenge that ruling here. In fact, it is far from clear that the bona fide occupational qualification exception stated in the first sentence of § 4 (9A) applies to the last sentence of that section.

Kraft brought this action pursuant to G. L. c. 151B, § 9 (1988 ed.), challenging his termination as unlawful. His position, which a judge of the Superior Court agreed with, is that his discharge was for a reason proscribed by the first sentence of § 4 (9A) (termination for failure to provide certain information), and that, although he lied about his hospitalization for mental illness, his discharge was improper because the questions concerning his hospitalizations for mental illness never should have been asked and, therefore, his untruthful answers to those questions could not properly be a basis for discharging him.[3]

The commissioner has appealed from a Superior Court judgment ordering that Kraft be reinstated without loss of benefits or seniority, and awarding him damages for lost compensation and emotional distress, attorneys' fees, and costs. The judge stayed Kraft's reinstatement to active duty pending appeal. We granted Kraft's application for direct review and now affirm the judgment.

The commissioner had no authority to discharge Kraft for giving false answers to questions that the commissioner under law had no right to ask, and he does not argue otherwise. The commissioner argues rather that § 4 (9A) cannot bar him from inquiring into the previous mental health hospitalizations of an applicant for a position in which the applicant, if successful, would be expected to carry a gun.[4] Section 4 (9A) obviously does not make the exception the commissioner argues for, and we should not manufacture it judicially. The commissioner does have the responsibility to

---

[3]For a reason not apparent on the record, the commissioner did not rely on Kraft's untruthful answers concerning his previous mental or emotional disorders and the like. The questions directed to Kraft's previous mental health, and not to his hospitalizations for mental illness, were not forbidden by the second sentence of § 4 (9A). In addition, the first sentence of § 4 (9A) does not explicitly forbid termination of employment for untruthfully answering such questions. The course of this litigation might have been very different if the commissioner had relied on the false answers to questions not barred by § 4 (9A).

[4]The record does not show that every Boston police officer must be authorized to carry a weapon, but we shall assume it to be true.

determine the conditions under which a police officer will qualify to carry a weapon. See St. 1906, c. 291, §§ 11 and 14, as appearing in St. 1962, c. 322, § 1; G. L. c. 41, § 98 (1988 ed.). He could have obtained information concerning Kraft's qualifications, however, without violating § 4 (9A).[5] The inconsistency the commissioner asserts between the clear prohibition of § 4 (9A) and his necessary obligation to inquire into a police officer's qualifications to carry a firearm simply does not exist.

We reject the commissioner's further argument that, because Kraft voluntarily consented to the disclosure of all his medical records, he waived his rights. Rights set forth in § 4 (9A) may not be waived. To rule otherwise would effectively negate the legislative purpose in enacting § 4 (9A). See *Spence* v. *Reeder*, 382 Mass. 398, 413 (1981).

The commissioner argues that he is entitled to qualified immunity in carrying out a discretionary function in good faith. See *Duarte* v. *Healy*, 405 Mass. 43, 50 (1989); *Gildea* v. *Ellershaw*, 363 Mass. 800, 820 (1973). The short and complete answer is that, assuming that qualified immunity is available with respect to violations of G. L. c. 151B, § 4 (9A), the commissioner had no discretion to violate the explicit prohibition of § 4 (9A) against asking questions concerning any admission to a facility for the care and treatment of mentally ill persons. Whatever other problems of interpretation § 4 (9A) has, the impropriety of asking about any hospitalization in a mental health facility, and the prohi-

---

[5]Today the circumstances of this case would be affected by G. L. c. 151B, § 4 (16), which was not in effect at the time Kraft filled out the forms and was hired. St. 1983, c. 533, § 6. That statutory language allows an employer to "condition an offer of employment on the results of a medical examination conducted solely for the purpose of determining whether the employee, with reasonable accommodation, is capable of performing the essential functions of the job." Section 4 (9A) "is confusing in several respects and loaded with provisos, but is in any event for all practical purposes superseded by the more comprehensible § 4 (16), which prohibits employers from asking an applicant whether she is handicapped, or the nature and severity of any handicap," subject to the employer's right to condition an offer of employment as stated above. Heins, Massachusetts Civil Rights Law, 76 Mass. L. Rev. 26, 31 (1991).

bition against discharging an employee for failure to provide an answer, were "clearly established" by the language of § 4 (9A). See *Duarte* v. *Healy, supra* at 47-48. Cf. *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818 (1982) (immunity under 42 U.S.C. § 1983 [1982]).

*Judgment affirmed.*