## J. Edmund & Co. & others[1] *vs.* Robert Rosen & others.[2]

Suffolk. January 6, 1992. - May 6, 1992.

Present: Abrams, Lynch, O'Connor, & Greaney, JJ

*Evidence*, Presumptions and burden of proof. *Practice, Civil*, Directed verdict, New trial. *Evidence*, Relevancy and materiality. *Attorney at Law*, Malpractice.

The judge in a malpractice action against partners in a law firm properly denied motions by the plaintiffs for a directed verdict on the issues of liability and causation at the close of all the evidence and, after judgment was entered, for judgment notwithstanding the verdict. [575-576]

At the trial of a malpractice action against partners in a law firm, the judge acted within her discretion in denying the plaintiffs' motion for a new trial. [576]

At the trial of a legal malpractice action in which plaintiffs doing business as a security brokerage firm alleged that the defendant attorneys failed properly to advise them during the formation of their brokerage firm, and thereafter, about registration requirements with the result that laws were violated, sanctions imposed by the Securities and Exchange Commission (SEC), and damages incurred, the judge did not err in admitting testimony concerning a consent decree entered into by one of the plaintiffs with the SEC at an earlier time, whereby he agreed to be suspended for a two-week period for violation of a SEC regulation, where the plaintiffs themselves had opened the door to testimony on this subject; nor did the judge err in admitting testimony of two of the defendant attorneys concerning their impresssion that the plaintiff understood State registration requirements where, based on the evidence in the plaintiffs' case, evidence of the attorneys' understanding of the plaintiff's experience was relevant. [576-577]

[1]John Edmund Ligums, Jelco, Inc., Largo Realty, Inc., and David Altschuler. This appeal is by J. Edmund & Co., Ligums, and Jelco, Inc. (hereinafter, plaintiffs).

[2]Nine other lawyers engaged with Rosen in the practice of law in the firm of Lane & Altman.

CIVIL ACTION commenced in the Superior Court Department on October 6, 1983.

The case was tried before *Barbara J. Rouse*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael Arthur Walsh* for the plaintiffs.

*Barbara L. Moore* (*Robert S. Molloy* with her) for the defendants.

GREANEY, J. The plaintiff J. Edmund & Co. (company) is a Massachusetts limited partnership doing business as a broker and dealer in a specialized form of security. The other plaintiffs are current or former principals of the company. The defendants are partners in a Boston law firm. The plaintiffs filed a complaint in the Superior Court seeking damages for harm allegedly caused by the defendants' malpractice. The action was tried to a jury who returned a special verdict in favor of the defendants. The plaintiffs appealed from the judgment entered for the defendants, and we transferred the case to this court on our own motion. The plaintiffs claim error in the trial judge's denial of their motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. We conclude that the judge properly denied these motions, and, consequently, affirm.

There was conflicting evidence at trial which need not be summarized in detail. The plaintiff, John Edmund Ligums, a knowledgeable and experienced person in the securities field, testified that he retained the defendants to advise and assist him in starting a brokerage firm which would specialize in selling a specific type of security known as the limited price option.[3] The company was formed as a limited partnership.

---

[3]According to the evidence, limited price put and call options are a very sophisticated, high risk type of security. Each option relates to a particular underlying stock, warrant or bond. By purchasing the option, the purchaser buys the right to buy or sell the underlying security for a specified price for a specified period of time. However, once the underlying security reaches the price established in the option, the option expires. The options in this case also allowed their holder to alter the specified price of the underlying security for an additional set percentage fee.

The plaintiffs maintained, through Ligums and other witnesses and evidence, that Robert Rosen and another lawyer in the defendants' law firm, Joseph Mazzella, failed properly to advise them during the formation phase of the venture, and thereafter, about registration requirements with the result that laws were violated, sanctions imposed by the Federal Securities and Exchange Commission (SEC), and damages incurred.[4] The defendants maintained, through various witnesses and evidence, that Ligums led them to believe that the company would only do business in Massachusetts, and that, when disclosure was made that the company was doing, or might do business elsewhere, proper advice was given. There were also three expert witnesses. Each expert was a partner in a large Boston law firm and was experienced in securities law. The plaintiffs' expert testified that the defendants had not met the standard of professional care expected of a specialist in securities law in the circumstances.[5] The

[4]It was disclosed at trial that the company had conducted business in New Jersey and several other States without proper registration.

The plaintiffs claimed damages as a result of the alleged malpractice as follows: The company was sued by purchasers of its options in Florida and New Jersey, and alleged that the suits resulted from its conducting business in those States without first having registered. The company settled both lawsuits. In connection with the New Jersey lawsuit, the company paid $275,000.00 in settlement, and expended $105,718.06 in legal fees defending the suit. In connection with the Florida lawsuit, the company paid $99,000.00 in settlement, and incurred legal expenses in the amount of $84,816.61 in defending the suit. The company argued that the lawsuits resulted from the defendants' failure to provide adequate legal services, and both the settlements and the legal fees were fair and reasonable. Consequently, the company sought to recover from the defendants the total of the settlements and legal fees, $564,534.67, plus interest and costs.

[5]The plaintiffs suggest in their brief that this case raises the issue of the standard of care to be applied to attorneys who hold themselves out as specialists. Nothing in the record indicates that this was a disputed matter at trial. The judge charged the jury to view the defendants' services in light of "the degree of skill and care which an average, qualified practitioner in the area of securities should have exercised," and submitted to the jury, as the first question on the verdict form, the following question: "Have the plaintiffs proved that the defendants failed to exercise a reasonable degree of care and skill required of the ordinary practitioner specializing in securities law in the performance of their legal duties?" The jury answered "no" to this question, and, as instructed, did not consider the

defendants' two experts testified that the defendants had met the applicable standard.

1. At the close of the evidence, the plaintiffs moved for a directed verdict on the issues of liability and causation. The judge denied the motion. After the judgment was entered, the plaintiffs moved for judgment notwithstanding the verdict. This motion was also denied. The plaintiffs now argue that the judge erred in denying their motions.

"We have held on numerous occasions that where a party has the burden of proving an essential fact, 'it can [rarely] be ruled as a matter of law that the burden . . . has been sustained [and that] [t]his is especially true when the attempt to sustain that burden rests upon oral testimony introduced by the party upon whom the burden rests, and upon inferences from circumstances.' " *Crall* v. *Leominster*, 362 Mass. 95, 104 (1972), quoting *McDonough* v. *Metropolitan Life Ins. Co.*, 228 Mass. 450, 452 (1917). There may be exceptions to this general rule, for example, when "parties do actually agree on all the material facts . . . and the reasonable inferences to be drawn therefrom and disagree only as to the legal effect of the controlling principles. . . [or when] [t]he defendant's own binding testimony precludes a verdict for him." J.W. Smith & H.B. Zobel, Rules Practice § 50.8 (1977). See *McDonough* v. *Metropolitan Life Ins. Co.*, *supra* at 453, and cases cited. These exceptions "are exceedingly rare, and the present case does not represent one of them. It is governed by the general rule." *Crall* v. *Leominster*, *supra*.

There was nothing in the case which would conclusively bind the defendants or otherwise create a case which required a directed verdict for the plaintiffs. The judge could have properly denied the plaintiffs' motion on the basis that the defendants had no burden of production and that the jury could find for the defendants if they concluded that the plaintiffs had failed to establish negligence. Despite the

---

other questions on the verdict form. Neither party objected to the charge or the question. Thus, the question of the applicable standard of care is not in issue, and in reviewing the case we apply the standard reflected in the judge's charge and the question on the verdict form.

plaintiffs' arguments to the contrary, the question of malpractice was a question of fact for the jury.

2. We reject the plaintiffs' further argument that the judge erred in denying their motion for a new trial. A trial judge may set aside a jury verdict and order a new trial if the verdict is against the clear weight of the evidence. *Oldham* v. *Nerolich*, 389 Mass. 1005, 1005-1006 (1983). *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 60 (1948). That determination rests in the sound discretion of the trial judge. *Hartmann, supra* at 61.

The parties presented conflicting versions of the facts and conflicting expert testimony on the standard of care. The judge acted within her discretion in deciding that the central issues concerned credibility and weight which had been properly reserved for the jury. *Cherubino* v. *Board of Registration of Chiropractors*, 403 Mass. 350, 356 (1988).

3. The plaintiffs also argue that they are entitled to a new trial because the judge improperly admitted: (a) testimony concerning a consent decree entered into by Ligums with the SEC in 1982, whereby he agreed to be suspended for a two-week period for violation of a SEC regulation; and (b) testimony of Rosen and Mazzella concerning their impression that Ligums understood State registration requirements.

(a) Before the plaintiffs' evidence was concluded the jury had heard a great deal about the SEC investigation. The plaintiffs opened the door to cross-examination, and testimony, concerning the result of that investigation — Ligums' suspension. The plaintiffs have not shown that the admission of this evidence was "plainly wrong." *Horowitz* v. *Bokron*, 337 Mass. 739, 742 (1958).

(b) The judge did not err in admitting testimony by Rosen and Mazzella about Ligums' understanding of State registration requirements. Some of the criticized testimony was admitted without objection. The defendants maintained that the services they rendered to the plaintiffs were based, in part, on their reasonable perceptions of Ligums' sophistication. Based on the evidence in the plaintiffs' case, evidence of the attorneys' understanding of Ligums' experience was rele-

vant, *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978), and the judge had discretion to admit it.

*Judgment affirmed.*