PATRICIA LYSAK VS. THE SEILER CORPORATION.

Middlesex. March 3, 1993. - June 21, 1993.

Present: NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Anti-Discrimination Law*, Termination of employment. *Practice, Civil*, Directed verdict, Instructions to jury. *Evidence*, Emotional state, Expert opinion, Relevancy and materiality.

At the trial of an employee's sex discrimination claim against her former employer allegedly for discharging her because she was pregnant, the plaintiff was not entitled to a directed verdict, where her proof depended upon oral evidence, and where the rule articulated in *Kraft* v. *Police Comm'r of Boston*, 410 Mass. 155 (1991), barring an employer from discharging an employee because of the employee's false responses to unlawful inquiries in an employment application, did not assist the plaintiff, since there was no evidence, binding on the defendant, that the plaintiff's false statements, at the time of her employment interview, had been in response to the defendant's unlawful inquiries, rather volunteered by the plaintiff. [627-628]

At the trial of an employee's sex discrimination claim against her former employer for allegedly discharging her because she was pregnant, the judge did not err in refusing to give a certain jury instruction requested by the plaintiff where, contrary to the requested instruction, the defendant could properly have based an employment decision on a false, but unsolicited, statement of the plaintiff at her employment interview, to the effect that she had no intention of having more children, although she knew at the time that she was pregnant. [629-630]

At the trial of an employee's sex discrimination claim against her former employer for allegedly discharging her because she was pregnant, the judge's exclusion of the plaintiff's testimony regarding her emotional distress was not prejudicial to her, where the evidence was offered only on the question of damages and was not offered in whole or in part to prove liability, and, in any event, was not relevant to liability. [630-633]

CIVIL ACTION commenced in the Superior Court Department on December 23, 1987.

The case was tried before *Joseph S. Mitchell, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Scott L. Machanic* for the plaintiff.

*Harry L. Manion, III* (*Mark H. Burak* with him) for the defendant.

O'CONNOR, J. The plaintiff, Patricia Lysak, states in her complaint that her employer, the defendant, The Seiler Corporation, terminated her employment because she was pregnant, and that therefore the termination violated the prohibition found in G. L. c. 151B, § 3, against discrimination in employment because of sex. See *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 430 (1979), and *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 392, 397 n.8 (1979), in which this court held that pregnancy is a sex-linked classification. After a jury trial, the jury found for the defendant and a judgment was entered accordingly. The plaintiff appealed and we transferred the case here on our own initiative. On appeal, the plaintiff argues that the trial judge erred by not directing a verdict in her favor pursuant to her request. She also argues that the judge erred by not giving a jury instruction that she had requested and by excluding testimony concerning her emotional distress. We affirm the judgment.

We summarize the evidence relevant to the first two issues, beginning with the plaintiff's testimony. The plaintiff testified that, after being interviewed on February 20, 1987, by William Zammer, the defendant's president, she was employed by the defendant as its marketing director beginning March 23, 1987. On April 24, 1987, she told Zammer that she was pregnant. Zammer was extremely upset by that revelation. He told her that the situation was "untenable" and that she could not continue in the position for which she had been employed. He said that he felt "personally betrayed." Zammer told her that she had lied to him about being career oriented. She denied that she had lied. On the Monday following April 24, the plaintiff proposed to Zammer that her

employee status be terminated and that, instead, she be considered an independent contractor. The plaintiff and defendant then entered into such a relationship which lasted until the middle of July, 1987.

According to the plaintiff's testimony, when Zammer interviewed her for employment on February 20, 1987, Zammer and she did not discuss any plans she might have had with regard to either having or not having more children. The plaintiff was pregnant at the time of her interview with Zammer and, because of positive laboratory tests and her doctor's confirmation, she knew at that time that she was pregnant.

Zammer's testimony in substance was that, when he and the plaintiff first met on February 20, 1987, she told him, without any solicitation by him, that her husband stayed home and took care of their two children with the help of an au pair and that "she was not planning on having any more kids." Zammer's testimony was that he would have hired the plaintiff if he had known she was pregnant, but, because she told him, without being asked, that she had no intention of having more children and that was a lie, he felt betrayed. Zammer testified that on the Monday following the April 24 disclosure of her pregnancy, the plaintiff told him that she had made a mistake, that she had lied to him and wanted to make it up to him. According to his testimony, Zammer told the plaintiff that she had lied to him and he would not be able to trust her anymore. Nevertheless, he accepted her proposal that she and the defendant would enter into an independent contractor relationship because the defendant had some unfinished projects that needed prompt completion and she could complete them.

On appeal, the plaintiff's first contention is that she was denied a directed verdict to which she was entitled. It is very seldom that a verdict dependent on oral evidence can be directed in favor of the party with the burden of proof. *Foley* v. *Polaroid Corp.*, 400 Mass. 82, 89 (1987). Nevertheless, the plaintiff says she was entitled to a directed verdict in this case because of the principle articulated in *Kraft* v. *Police*

*Comm'r of Boston,* 410 Mass. 155 (1991). In that case, the plaintiff was required to complete two forms under oath in connection with his application for appointment as a police officer. The forms unlawfully required him to give information about his mental health history. He gave false information and several years later the defendant commissioner terminated his employment because he "had failed to disclose his Veteran[s'] Administration Hospital admissions on his answers to application questions." *Id.* at 156. The defendant commissioner argued to this court that the relevant statute, G. L. c. 151B, § 4(9A) (1988 ed.), did not bar him from inquiring into the mental health hospitalization history of an applicant for a position that would require the carrying of a gun. We held that the inquiries were prohibited by the statute, and that "[t]he commissioner had no authority to discharge [the plaintiff] for giving false answers to questions that the commissioner under law had no right to ask." *Id.* at 157. Based on *Kraft,* the plaintiff argues that, "accepting the defendant's version of the facts," that is, that Zammer discharged the plaintiff for giving unsolicited false information about whether she was pregnant, Zammer, and therefore the defendant, violated the law by discharging the plaintiff, at least constructively, on April 24, 1987. Therefore, the plaintiff argues, the discharge cannot stand.

*Kraft* does not help the plaintiff. A rule that bars an employer from discharging an employee because of the employee's false responses to the employer's unlawful inquiries, does not bar a discharge due to unsolicited, volunteered, false statements made by the employee. Any result other than the one reached in *Kraft* at best would have ignored the employer's unlawful inquiries, and at worst would have rewarded the employer for them. In either event, employers in the future would have been encouraged to violate the law. Here, however, there was no evidence, binding on the defendant, that unlawful inquiries had been made. Therefore, the evidence warranted the jury's verdict that the defendant's discharge of the plaintiff was lawful, and the plaintiff was not entitled to a directed verdict.

Next, the plaintiff contends that it was error for the trial judge not to give proposed jury instruction number 17. The first of that proposed instruction's two sentences states: "Because the Defendants [could] not legally make any employment decisions based solely on the fact that Mrs. Lysak was pregnant, and because they also could not legally inquire whether she was pregnant, you are instructed that, as a matter of law, they could not base any employment decision on any alleged misrepresentation by Mrs. Lysak concerning her pregnancy. *Kraft* v. *Police Commissioner of Boston*, 410 Mass. 155 (1991)." That instruction could not properly have been given for the same reason, stated above, that the plaintiff was not entitled to a directed verdict. Contrary to the requested instruction, the defendant could properly have based an employment decision on an unsolicited misrepresentation by the plaintiff concerning pregnancy if the jury found those to be the facts.

The second and final sentence of the proposed instruction at issue on appeal states: "Therefore, if you find that the Defendants did in fact base an employment decision in whole or in part on the alleged misrepresentation by Mrs. Lysak about the pregnancy, the Defendants must prove that the same decision would have been made absent a consideration of any information about the pregnancy. *Fields* v. *Clark University*, 817 F.2d 931 (1st Cir. 1987)." The second sentence would have been an incorrect instruction, too, because, although it is less than clear, it appears to be based on the same incorrect legal premise that underlies the first sentence. Furthermore, the plaintiff did not preserve for review the judge's failure to give the requested second sentence as required by Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974). At the conclusion of the jury instructions, plaintiff's counsel protested to the judge his failure to give the requested "instruction that a lie about a protected category of information is not a defense towards sex discrimination." The proposed second sentence of requested instruction number 17 focused on a different issue regarding shifting of the burden of proof as to causation once unlawful discrimination has been shown to be

a factor motivating discharge. Plaintiff's counsel did not discuss that issue with the judge.

The plaintiff's last argument is that the judge committed prejudicial error by excluding her testimony regarding her emotional distress. The plaintiff contends that this evidence was admissible in the form in which it was offered and that it was relevant not only to damages but to liability as well. The relevant evidence, in addition to the evidence summarized earlier in this opinion, is as follows. On direct examination the plaintiff testified at length about her loss of income and fringe benefits due to her discharge and about her efforts to find a new position. Plaintiff's counsel then asked the plaintiff how "did [she] feel about [her] severance" when Zammer told her her relationship with the defendant was over. The defendant objected and the evidence was excluded, apparently on the ground that such evidence was inadmissible in the absence of expert opinion testimony. At a side bar conference, plaintiff's counsel informed the judge that he expected the plaintiff to testify as to how the severance affected her psychologically. Counsel told the judge that the plaintiff would say, if she were permitted to testify, that "she felt devastated, she had never been fired before, and that it wreaked emotional havoc on her." Counsel told the judge that he expected to ask the plaintiff how the additional financial strain of the termination affected her, and he said that the plaintiff would say that she "felt humiliated, because she had to go out and ask for extensions of credit." Also, according to counsel, he expected the plaintiff to testify that her "career was in a shambles" because of the defendant's termination of her employment.

We assume, favorably to the plaintiff, that expert testimony was not required to show the plaintiff's emotional distress and that the plaintiff's testimony on that subject should have been admitted. Since the jury did not reach the question of damages, however, the error was not prejudicial to the plaintiff unless the evidence was offered, at least in part, to prove liability, and unless it was relevant to the liability issue. We are satisfied that the emotional distress evidence was

not offered in whole or in part to prove liability, and, in any event, it was not relevant to liability.

The context in which the emotional distress testimony was offered could not reasonably have suggested to the judge, and does not suggest to us, that it was offered for any purpose except to prove damages, and plaintiff's counsel said nothing different at the side bar conference. The plaintiff cannot fairly claim now that she is entitled to a new trial because the jury was not permitted to consider, in reference to liability, evidence that was offered only on the question of damages.

Furthermore, the proffered testimony was not relevant to liability. In deciding whether, as the plaintiff testified, she did not tell Zammer that she intended to have no more children or lie to him and Zammer discharged her solely because she later told him she was pregnant, or, as Zammer testified, the plaintiff volunteered the information that she had no intention to have more children, even though she knew that she was pregnant, so that Zammer felt betrayed and could no longer trust her, the jury could not have been helped by the excluded evidence. The jury could not have been helped, in determining which version of the facts leading to the termination of the plaintiff's employment they should accept, by testimony from the plaintiff that she felt devastated and humiliated by having been discharged, that the discharge "wreaked emotional havoc on her," and that her career was "in a shambles" because her employment had been terminated. Nothing in the offer of proof suggests that the plaintiff's distress was more likely due to her having been discharged because she was pregnant than to her having been discharged because she lied to the defendant's president during the employment interview.

The plaintiff now argues that the relevancy to liability of the excluded emotional stress testimony is demonstrated by defense counsel's closing argument to the jury. The argument, in relevant part, was as follows: "You know, you looked at [Zammer], he is still mad. He is upset four years later . . . . Did you see any emotion out of [the plaintiff]? If

it happened like [she] said it had happened, wouldn't she be damn mad? Wouldn't she be angry? Wouldn't we have some emotion? . . . You know, [the plaintiff's] conduct is even more bizarre after the pregnancy announcement. . . . It's totally inconsistent with her version of what happened. . . . She says she walks in the day of the announcement and she apologizes for the embarrassment. . . . She has two children. She knows what a joy children are, and she goes in and apologizes for having the liability of being pregnant? Does that make any sense to you, ladies and gentlemen of this jury? . . . What do you do with this resignation and this independent contract? She says I did it to regain his trust. What did she do to lose it? Just become pregnant? Doesn't that stick in your mind? She says to you people of the jury, 'Resignation was my only option.' Oh, come on, do any of you believe that? . . . If it happened . . . she should have walked out that door in Waltham and never looked back. That is what a good decent person would have done and sued this company for all it's worth right away. That's what she should have done if it happened the way she said it happened."

The plaintiff's contention is that "[d]efense counsel savagely seized on exactly the testimony precluded by the Court, the testimony of [the plaintiff's] emotional response to the discrimination, and repeatedly rammed home to the jury the absence of evidence of an emotional response in what might be an emotional situation. The emotional evidence, or the lack of it, was jackhammered by defense counsel, not on damages, but on credibility and liability. The exclusion was extremely prejudicial, warranting a new trial."

We reject the plaintiff's argument. Defense counsel's assertion to the jury that the plaintiff's demeanor in the courtroom and her conduct after April 24, 1987, were inconsistent with her testimony about her discussions with Zammer, does not alter the fact, which we have discussed above, that the excluded evidence about the plaintiff's feeling of "devastation" and "humiliation" and the like could not have rationally assisted the jury in deciding why the plaintiff felt that

way, if she did. The evidence concerning the plaintiff's reaction to having been fired says nothing about whether she was fired because she was pregnant or because she lied, which is the question on which the ultimate question of liability turned. The excluded testimony would have shed no light on the question whether the plaintiff's employment was rightfully or wrongfully terminated. The exclusion of the testimony, assumed by us to have been erroneous, was not prejudicial to the plaintiff.

*Judgment affirmed.*