## REA M. BRUNELLE *VS.* W.E. AUBUCHON CO., INC.

No. 02-P-990.

Middlesex. November 14, 2003. - March 16, 2004.

Present: ARMSTRONG, C.J., KANTROWITZ, & COHEN, JJ.

*Negligence,* Causation. *Consumer Protection Act,* Unfair or deceptive act. *State Building Code. Practice, Civil,* Directed verdict, Judgment notwithstanding verdict, New trial.

In a civil action arising from the plaintiff's injuries resulting from a fall after encountering a hazard at one of the defendant's hardware stores, the judge properly dismissed the plaintiff's claim that the defendant had committed an unfair or deceptive act in violation of G. L. c. 93A, § 2(*a*), where the condition in question (a piece of metallic molding that protruded slightly from a display stand into the adjacent aisle and lacerated the plaintiff's ankle as she walked by) could not have constituted a violation of the State building code, and therefore, there was no basis for finding that the defendant had engaged in any unfair or deceptive act. [628-630]

In a civil action arising from the plaintiff's injuries resulting from a fall after encountering a hazard at one of the defendant's hardware stores, the judge properly denied the plaintiff's motions for directed verdict and for judgment notwithstanding the verdict on her claim of negligence, where it could not be said as a matter of law that the plaintiff had sustained her burden of proving causation through reliance on oral testimony and inferences from circumstances [630-631]; moreover, the judge did not abuse his discretion in denying the plaintiff's motion for a new trial, where the judge was well-entitled to conclude that the jury's finding that the plaintiff had failed to prove causation was a reasonable response to the evidence [631].

CIVIL ACTION commenced in the Superior Court Department on September 28, 2000.

The case was tried before *Raymond J. Brassard,* J., and a motion for a new trial was heard by him.

*Richard P. Campbell (Kathleen M. Guilfoyle* with him) for the plaintiff.

*Jacqueline L. Allen (Jon S. Hartmere* with her) for the defendant.

COHEN, J. In this action to recover for personal injuries, the plaintiff, an elderly woman, claimed that she fell and broke her hip after encountering a hazard at one of the defendant's hardware stores. She contended that her fall was provoked by a piece of metallic molding ("ticket chrome") that protruded slightly from a display stand into the adjacent aisle and lacerated her ankle as she walked by. According to the plaintiff, this hazard resulted from the defendant's negligence; and, because the protrusion violated the State building code, it was a per se violation of G. L. c. 93A.

The plaintiff's claim went to trial — the negligence claim to be determined by a jury, and the c. 93A claim reserved for the trial judge. At the close of the evidence, the judge allowed the plaintiff's motion for a directed verdict on the defendant's affirmative defense of comparative negligence. In answer to special questions, the jury found that, although the defendant was negligent, its negligence was not a substantial factor in causing the plaintiff's injuries.

After the jury returned their verdict, the plaintiff filed a motion for a directed verdict on causation, a motion for judgment notwithstanding the verdict, and a motion for a new trial, all of which were denied. On the c. 93A claim, the judge found that there was a slight projection of ticket chrome into the aisle, which, in his view, constituted a violation of § 1011.1.3 of the State building code.[1] He also found that the plaintiff had established a causal relationship between the protrusion and the plaintiff's fall. Nevertheless, the judge dismissed the c. 93A claim pursuant to Mass.R.Civ.P. 41(b)(2), 365 Mass. 804 (1974), because he found no evidence of an unfair or deceptive act or practice, an element he considered essential under *Mechanics Natl. Bank* v. *Killeen*, 377 Mass. 100, 109 (1979). The judge reasoned that the very minor violation of the building code, even if indicative of negligence, did not "sink to the level of being unfair or deceptive."

The plaintiff appeals from the disposition of her posttrial motions and from the judge's dismissal of her c. 93A claim. We af-

---

[1]Although the judge did not identify the specific provision of the building code upon which he relied, the parties agree that the salient provision is 780 Code Mass. Regs. § 1011.1.3 (1997).

firm, although, as to the c. 93A claim, on a different ground from that relied upon by the trial judge.

1. *Chapter 93A claim.* General Laws c. 93A makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." G. L. c. 93A, § 2(*a*), as inserted by St. 1967, c. 813, § 1. It also confers upon the Attorney General the authority to promulgate rules and regulations defining acts and practices that violate the statute. See G. L. c. 93A, § 2(*c*).[2] See also *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 771-772, 774-775 (1980). Pursuant to that authority, the Attorney General has established that an act or practice violates G. L. c. 93A, § 2, if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection." 940 Code Mass. Regs. § 3.16(3) (1993).

The plaintiff argues that the building code is meant for the protection of the public's health, safety, and welfare, and therefore, by virtue of the Attorney General's regulation, any building code violation, no matter how minor, is per se a violation of G. L. c. 93A. Because the judge concluded that the defendant violated the building code and that the violation caused the plaintiff's fall, the plaintiff contends that she automatically was entitled to a favorable decision on her c. 93A claim.

We need not consider whether the plaintiff is correct that the Attorney General's omnibus regulation invariably transmutes a building code violation into a per se violation of G. L. c. 93A, because the plaintiff's claim falters on another ground. As we read the applicable regulations, the condition in question could not be found to be a building code violation. For this reason, if no other, the c. 93A claim was properly dismissed.

The building code states that "[t]he *required width* of pas-

---

[2]General Laws c. 93A, § 2(*c*), states: "The attorney general may make rules and regulations interpreting the provisions of subsection 2(a) of this chapter. Such rules and regulations shall not be inconsistent with the rules, regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. [§ ] 45(a)(1) (The Federal Trade Commission Act), as from time to time amended."

sageways, aisle accessways, aisles and corridors shall be maintained free of projections and restrictions" (emphasis supplied). 780 Code Mass. Regs. § 1011.1.3 (1997). Although the term "required width" is not defined in § 1011.1.3, a related provision of the building code establishes numerical values for this term based upon a building's occupancy load.[3] In the present case, experts for both parties testified, and it was not disputed, that the store's occupancy load was greater than fifty. Accordingly, the store aisle was required to be at least forty-four inches wide. When this value is inserted into § 1011.1.3, the regulation reads: "The required width of . . . aisles[, forty-four inches,] shall be maintained free of projections and restrictions." Thus, under a proper interpretation of the building code, only forty-four inches, the mandated width, was required to be kept clear of projections and restrictions.

On this point, the evidence indicated that the aisle at issue was, at a minimum, forty-seven and one-quarter inches wide[4] and that the ticket chrome extended into the aisle at most one-half inch.[5] Given these measurements, it is apparent that the ticket chrome did not project into the forty-four inch space required by the building code. As a result, the condition relied upon by the plaintiff, even if it could be found to be hazardous, did not violate § 1011.1.3. On this basis, the trial judge's dismissal of the c. 93A claim must be affirmed. See *Kelly* v. *Avon Tape, Inc.*, 417 Mass. 587, 590 (1994) ("a correct ruling

---

[3]This provision states: "The minimum *required width* of passageways, aisle accessways, aisles and corridors shall be determined by the most restrictive of the following criteria: . . . 44 inches . . . where serving an occupant load of greater than 50[;] . . . 36 inches . . . where serving an occupant load of 50 or less[;] . . . 96 inches . . . in an occupancy in [a building or structure used for medical, surgical, psychiatric, nursing, or child care] used for the movement of beds[;] . . . 72 inches . . . in an occupancy in [a structure used for educational purposes through the twelfth grade or a child day care center] with more than 100 occupants[;] . . . [t]he width required for capacity [of egress components] as determined by 780 [Code Mass. Regs. § ] 1009.0 [(1997)]." (Emphasis supplied.) 780 Code Mass. Regs. § 1011.3 (1997).

[4]The defendant's expert testified that it was forty-seven and one-quarter inches. The plaintiff's expert testified that it was fifty-eight and one-quarter inches.

[5]Witnesses testified that the protrusion measured between one-eighth inch and one-half inch. The trial judge characterized the protrusion as "on the order of an eighth, or perhaps slightly longer, of an inch."

of the trial court will be upheld, even if the appellate court relies on a different ground than the one relied on by the trial court").

2. *Motions for directed verdict and for judgment notwithstanding the verdict.* It is the plaintiff's position that she was entitled to the entry of judgment in her favor on her negligence claim because she established the element of causation as matter of law. Although the defendant argues in its brief that the plaintiff did not properly preserve her rights on this issue,[6] the trial judge elected to address it on the merits, and we do the same.

The plaintiff places much emphasis on the judge's allowance of a directed verdict in her favor on the defendant's affirmative defense of comparative negligence and the asserted lack of evidence to suggest that anyone or anything other than the condition of the premises caused her to fall.[7] However, neither the judge's ruling nor the absence of an alternative explanation relieved the plaintiff of her burden of proving that the defendant's negligence caused her injuries. See *Glidden* v. *Maglio*, 430 Mass. 694, 696 (2000).

When a party has the burden of proof, it can rarely be ruled as matter of law that the burden has been sustained, especially when the burden-carrying party has relied upon oral testimony or inferences from circumstances. *J. Edmund & Co.* v. *Rosen*, 412 Mass. 572, 575 (1992). It is only in exceptional situations — where the parties agree on all material facts and the reasonable inferences to be drawn therefrom and disagree only as to

---

[6]A motion for directed verdict "at the close of all evidence" is a prerequisite to obtaining relief on a motion for judgment notwithstanding the verdict. *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian*, 419 Mass. 841, 847 (1995), quoting from Mass.R.Civ.P. 50(b), 365 Mass. 814 (1974). See *Service Publications, Inc.* v. *Goverman*, 396 Mass. 567, 571 n.5 (1986). The phrase "at the close of all evidence" has been construed to mean that the motion must be made before jury deliberations begin. See *Rhode Island Hosp. Trust Natl. Bank* v. *Varadian*, *supra.* It appears from the record that the plaintiff did not file her motion for a directed verdict as to causation on the negligence claim or for judgment notwithstanding the verdict on the negligence claim until after the jury had already rendered its verdict. The trial judge nevertheless elected to consider the issues raised, perhaps because the defendant did not contend at the time that the motions were procedurally defective.

[7]The plaintiff's characterization of the evidence is not entirely accurate. The plaintiff's treating physician testified that elderly people may fall and fracture their hips for a variety of medical reasons.

the legal effect of the controlling principles, or where the defendant's own binding testimony precludes a verdict in his favor — that the burden-carrying party may obtain a directed verdict. *Ibid.* See generally Smith & Zobel, Rules Practice § 50.8 (1977). This case presents no such exceptional circumstances. On the evidence presented, the jury were free to conclude that the plaintiff fell for reasons having nothing to do with the negligence of either party or that the issue remained in sufficient doubt that the plaintiff did not carry her burden.[8]

3. *Motion for new trial.* "The standard that a trial judge is to apply on a motion for a new trial in a civil case is whether the verdict is so markedly against the weight of the evidence as to suggest that the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion." *W. Oliver Tripp Co.* v. *American Hoechst Corp.*, 34 Mass. App. Ct. 744, 748 (1993). Whether to set aside a verdict because it is against the weight of the evidence is a question addressed to the discretion of the trial judge, whose decision will not be disturbed unless that discretion has been abused. See *Robertson* v. *Gaston Snow & Ely Bartlett*, 404 Mass. 515, 520-521, cert. denied, 493 U.S. 894 (1989).

In this case, we discern no abuse of discretion in the trial judge's denial of the plaintiff's motion. The judge was well-entitled to conclude that the jury's finding that the plaintiff failed to prove causation was a reasonable response to the evidence.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[8]It is irrelevant that in addressing the c. 93A claim the judge found there was a causal link between the protruding ticket chrome and the plaintiff's fall, since "[i]t is indeed both possible and feasible for a judge deciding a c. 93A claim to make findings of fact that are contrary to those made by a jury on a parallel common law claim." *Kattar* v. *Demoulas*, 433 Mass. 1, 12 (2000). In any event, it is not at all clear that there was any direct contradiction, since the plaintiff posited several grounds of negligence apart from the protruding ticket chrome. The jury's finding of negligence may well have rested upon one of the other features of the premises that were criticized by the plaintiff's expert.