MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING
ASSOCIATION[1] *vs.* JAMES C. GEORGAKLIS; GEORGE HARRISON
& others,[2] third-party defendants.

No. 09-P-1536.

Suffolk. March 12, 2010. - August 12, 2010.

Present: MILLS, GREEN, & KATZMANN, JJ.

*Negligence,* Construction work. *Practice, Civil,* Summary judgment. *Joint Enterprise. Words,* "Joint venture."

In a civil action brought by the plaintiff insurer to recover damages for its insured's loss resulting from the defendant contractor's alleged negligent supervision of a subcontractor, a Superior Court judge erred in entering summary judgment in the defendant's favor on the basis of his claim that he was part of a joint venture with the plaintiff's insured at the time of the loss, where the evidence relied on by the defendant, i.e., his own self-serving deposition testimony and his particular view of the documentary evidence, failed to establish, as a matter of law, the shared intent required for a joint venture to exist. [360-362]

CIVIL ACTION commenced in the Superior Court Department on May 10, 2006.

The case was heard by *D. Lloyd Macdonald,* J., on a motion for summary judgment.

*Robert T. Norton* for the plaintiff.

*Jonathon D. Friedmann* for James C. Georgaklis.

MILLS, J. Massachusetts Property Insurance Underwriting Association (MPIUA), as subrogee of its insured, Diane Churchill, brought an action against James C. Georgaklis on May 10, 2006, alleging negligent supervision of a plumbing subcontractor. Georgaklis denied liability and filed a third-party complaint against two alleged joint venturers, Diane Churchill and Richard

---

[1]As subrogee of Diane Churchill.

[2]Charles Rocher; Richard Nieboer; and Diane Churchill, also known as Diane Nieboer.

Nieboer; and two subcontractors, an electrician, George Harrison,[3] and a plumber, Charles Rocher. In February, 2008, Georgaklis moved for summary judgment, arguing that he was a member of a joint venture with Churchill, and thus MPIUA, as Churchill's subrogee, was precluded from recovering against him. After hearing, the judge allowed the motion, and MPIUA appeals. For the reasons stated below, we vacate the grant of summary judgment for Georgaklis, and remand for further proceedings.

*Background.* We recite the background facts in the light most favorable to MPIUA, the nonmoving party. In March, 2003, Churchill purchased property located at 6 Beaver Street in Nantucket (property). She was the sole named grantee in the deed.[4] Churchill obtained homeowners' insurance on the property from MPIUA, effective March 14, 2003, and she was the sole named insured under that policy.

In May, 2003, a building permit issued for renovations to the property. Churchill's name is the only name listed on the first page of the application for the building permit, under the section entitled "OWNERS NAME."[5] The application for the building permit listed Georgaklis as the "Contractor," and he engaged the various subcontractors for the renovation work. Among those subcontractors were Harrison[6] and Rocher.

On or about May 12, 2003, the property was damaged by fire. In the fire investigation report issued by the Nantucket fire department, Churchill is the only individual listed under the section entitled "Owner." Additionally, she is the only signatory to the sworn statement submitted to MPIUA on the claim, and MPIUA paid $489,525.23 directly to Churchill on that claim. Subsequently, MPIUA, as subrogee to Churchill, commenced this action against Georgaklis, alleging that in his capacity as general contractor, he negligently supervised Rocher, the plumbing subcontractor.

In discovery, MPIUA requested a copy of the joint venture

---

[3]Harrison filed cross claims against Rocher, Nieboer, and Churchill.

[4]Although the name of the potential buyer on the offer to purchase is illegible, the potential buyer's address matches Georgaklis's business address.

[5]On the last page of the application for the building permit, a section entitled "Owner or Lessee" lists Churchill and Nieboer.

[6]Harrison stated in his deposition that Churchill was the owner of the property.

agreement which Georgaklis referred to in his answer and in his third-party complaint. The agreement was executed on January 28, 2005, between Georgaklis, Nieboer, and Churchill (collectively, the three). That date was approximately twenty-two months after Churchill's purchase of the property and twenty months after the fire. The agreement does not refer to any joint venture already in existence,[7] but instead contemplates a future transfer of property from Churchill to Georgaklis and Nieboer.[8]

*Discussion.* Under familiar principles, we review a grant of summary judgment to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991). The moving party "has the burden of initially showing that there is an absence of evidence to support the case of the nonmoving party shouldering the burden of proof at trial." *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 714 (1991).

If the three were joint venturers at the time of the fire, then they are subject to the same principles of liability as partners. See *Doiron* v. *Castonguay,* 401 Mass. 705, 707 n.2 (1988). As between partners, there is no liability for "honest mistakes." *Hurter* v. *Larrabee,* 224 Mass. 218, 220 (1916). See *Shain Inv. Co.* v. *Cohen,* 15 Mass. App. Ct. 4, 12 n.3 (1982).[9] MPIUA accepts these principles but argues that summary judgment was inappropriate because there is a genuine dispute of material fact whether a joint venture existed at the time of the fire.

[7]In his deposition testimony, Georgaklis stated that this agreement memorialized an earlier verbal agreement that the three had made in 2003. He also stated that in order to facilitate financing, the three agreed that the transaction would be made solely in Churchill's name.

[8]The agreement provides, in part, that "Georgaklis and Nieboer will be deeded property in Nantucket; Massachusetts . . . , which property is currently owned by Dianne Churchill," and that "Georgaklis and Nieboer have each contributed fifty (50%) percent of the down payment in order to purchase the Property, and intend to set forth their understanding regarding maintenance, upkeep, expenses and profits from the said Property."

[9]As the subrogee of Churchill, MPIUA is limited to the same rights of action as Churchill. See *Home Owners' Loan Corp.* v. *Baker,* 299 Mass. 158, 162 (1937). The parties agree that one joint venturer may not maintain an action against another joint venturer with respect to that joint venture. In addition, the complaint is one for negligent supervision, and there is no allegation of intentional misbehavior.

1. *Treatment of Georgaklis's deposition testimony.* While MPIUA had the burden to demonstrate Georgaklis's negligence, Georgaklis had the burden to demonstrate his immunity from liability based on his joint venture claim. See, e.g., *O'Sullivan* v. *Shaw*, 431 Mass. 201, 205 (2000) (defendant bears burden to demonstrate affirmative defenses in negligence actions). "When a party has the burden of proof, it can rarely be ruled as matter of law that the burden has been sustained, especially when the burden-carrying party has relied upon oral testimony or inferences from circumstances." *Brunelle* v. *W.E. Aubuchon Co.*, 60 Mass. App. Ct. 626, 630 (2004).[10]

In attempting to carry his burden, Georgaklis has relied solely on his own self-serving deposition testimony and his particular view of the documentary evidence.[11] We must recognize the possibility that a fact finder would be free to disregard such testimony in deciding whether a party has met his burden, and thus that testimony typically cannot furnish the decisive evidence required to demonstrate the absence of a genuine dispute of material fact.[12] *Id.* at 630-631. See *Lysak* v. *Seiler Corp.*, 415 Mass. 625, 627 (1993).

2. *Application of joint venture principles.* "The key requirement in finding [the] existence [of a joint venture] is an intent to associate." *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 623 (1990). "[F]actors indicating such an intent include an agreement among the participants for joint profits and a sharing of losses; a contribution of money, assets, talents, etc., to a common undertaking; a joint property interest in the subject matter of

---

[10]While *Brunelle* was decided in the context of a motion for directed verdict, we note that for most purposes, that standard "is identical to that applied to a motion for summary judgment." *Donaldson* v. *Farrakhan*, 436 Mass. 94, 96 (2002).

[11]We note that while the documentary evidence is consistent with Georgaklis's claim that the three agreed that the transaction would be solely in Churchill's name in order to facilitate financing, it is also consistent with MPIUA's claim that Churchill was the true owner of the property. In this procedural posture, we must view the evidence in MPIUA's favor.

[12]This case does not fall into the rare exception to that rule. See *Brunelle* v. *W.E. Aubuchon Co.*, *supra* at 630-631 ("the burden-carrying party may obtain a directed verdict" only "where the parties agree on all material facts and the reasonable inferences to be drawn therefrom and disagree only as to the legal effect of the controlling principles, or where the defendant's own binding testimony precludes a verdict in his favor").

the venture; and a right to participate in the control of the venture." *Id.* at 623-624. See *Shain Inv. Co.* v. *Cohen, supra* at 9.

We first note that while joint venture agreements need not be in writing, see *Gurry, supra* at 624, the written agreement in this case suggests a *future* intent to create a joint venture. That document provides that "Georgaklis and Nieboer *will be deeded property* in Nantucket; Massachusetts . . . , which property *is currently owned* by Dianne Churchill" (emphasis supplied). This suggests that no joint venture existed between the three at the time of the fire.

Additionally, considered in the light most favorable to MPIUA, the evidence leaves unresolved the intent to share in profits. In his deposition testimony, Nieboer stated, "No," in response to the question, "At any point, was the purpose of the joint venture to generate income for the three of you?"[18] See *Gurry, supra* at 623-624 (intent to share profits and losses is important component of joint venture).

Finally, "[w]hen the issue of a party's intent constitutes the essential element of a cause of action or defense, the granting of summary judgment is disfavored." *Id.* at 624. This is not a case where the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Brooks* v. *Peabody & Arnold, LLP*, 71 Mass. App. Ct. 46, 56 (2008), quoting from *Medina-Munoz* v. *R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Instead, MPIUA has relied on documentary evidence, language from the written joint venture agreement, and Harrison's and Nieboer's deposition testimony to support its claim that no joint venture existed at the time of the fire. We conclude that summary judgment was improperly granted in Georgaklis's favor.

*Conclusion.* The order allowing summary judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[18]Nieboer also agreed that the property would not be "able to generate more income than it puts out in expenses." He did state that if the property somehow did generate income, it would be used to offset expenses and the surplus split among them.