Hadley, PJ.
On September 10, 2013, the plaintiff-appellee, Richard Aronovitz (“Aronovitz”), filed a summary process complaint against the defendant-appellant, *57 Super liquors, Inc. (“SLI”), in the Fitchburg District Court. Aronovitz sought judgment for possession of commercial property in Fitchburg, as well as an award of rent and other charges due from May, 2013 to September, 2013.
In October, 2013, Aronovitz filed a motion for summary judgment with an accompanying memorandum of law, affidavits, and other supporting documents. SLI filed a cross motion for summary judgment. A hearing was held, and Aronovitz’s motion was allowed. The motion judge ordered that judgment enter for Aronovitz for possession and damages. SLI now appeals that judgment.
“Under familiar principles, we review a grant of summary judgment to determine “whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.’” Massachusetts Prop. Ins. Underwriting Ass’n v. Georgaklis, 77 Mass. App. Ct. 358, 360 (2010), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). After reviewing the evidence and the law, we find that Aronovitz was entitled to summary judgment on the issue of possession and to an award of damages. However, for the reasons stated below, we return the case to the Fitchburg District Court for a trial on the amount of damages Aronovitz is entitled to receive.
The documents introduced in support of the motions for summary judgment demonstrate that the following material facts are not in dispute. Prior to April, 2005, Aronovitz owned real property at 783 Water Street in Fitchburg (the “Property”) and operated a liquor store there. In April, 2005, Aronovitz sold the Property to the David Realty Trust (the “Trust”). He also sold the liquor store business to SLI. The sale was financed by Aronovitz, and the Trust executed a promissory note in favor of Aronovitz. The note was secured by a first mortgage on the Property. The Trust leased a portion of the Property (the “Leased Premises”) to SLI. Srey Long (“Long”) was the president, treasurer, secretary, and sole director of SLI. At some point, she also became the trustee of the Trust.
In 2011, the Trust defaulted on its mortgage payments, giving Aronovitz the right to pursue a foreclosure action. Aronovitz did not foreclose. Instead, he and the Trust entered into a written “Forbearance Agreement” that required the Trust to make certain payments to Aronovitz. As part of the Forbearance Agreement, the Trust executed a “Deed in Lieu” and an “Estoppel Affidavit” with regard to the Property, and a written lease was executed between SLI and Aronovitz for the Leased Premises (the “Lease”).
The Forbearance Agreement provided that if the Trust defaulted on that agreement and failed to cure within ten days, Aronovitz could record the Deed in Lieu and the Estoppel Affidavit at the registry of deeds and retake ownership of the Property. The Forbearance Agreement also provided that the Lease was “to become effective immediately upon the recording of the Deed in lieu and Estoppel Certificate in the event [SLI] is still the tenant at the Property at the time of the recording of the Deed in lieu and Estoppel Certificate.” The Deed in Lieu and Estoppel Certificate[1] were to be held in escrow by Aronovitz’s attorney, and the Lease was to be held in escrow by the attorney who represented the Trust and SLI.
*58 The Lease provided that it was “to be activated and put in force in the event that [the Trust] defaults on the mortgage note owed to [Aronovitz] and a deed-in-lieu of foreclosure is activated and recorded.” The Lease also provided that it was “conditional and will be considered, at the sole option of the Lessor, as having not become effective unless and until, within 10 days following the beginning of the start of this lease, the Lessor has been provided with” a $2,000.00 security deposit, copies of active leases for any other part of the Leased Premises, keys, manuals, and warranties for equipment. In addition, an initial monthly base rent of $5,070 was specified in the Lease, as were other charges for common areas and real estate taxes. The Lease also stated that the Trust and SLI “share common family ownership” and that the Lease was personally guaranteed by Long.
Beginning in 2005, SLI operated a liquor store on the Leased Premises, but in 2013, the Trust defaulted on its payment obligations under the Forbearance Agreement and failed to cure the default. On July 30,2013, pursuant to the Forbearance Agreement, the Deed in Lieu and the Estoppel Affidavit were recorded, and title to the Property reverted back to Aronovitz.
Aronovitz sent a letter, dated July 30,2013, by certified mail to the attention of Long at the “David Realty Trust” and “Fitchburg Liquor Store” (the “Letter”). In the Letter, Aronovitz stated that he had recorded the Deed in Lieu and that he was the owner of the Property. He demanded a decision from Long as to whether “the liquor business” would continue to operate at the Leased Premises, be sold, or move out.
Although he did not refer specifically to SLI, Aronovitz told Long that if there were an “intention to stay in possession of the liquor store portion of the premises and continue operation of the liquor store by implementation of the lease held in escrow,” certain “conditions apply according to the lease and the forbearance agreement.”
He stated that the “effective date for the lease is May 6,2013,” and that “$17,848 in back rent plus the August rent of $6,240 plus $2,000 deposit,” in total, a payment of $26,088.00, was “required to implement the lease.” He indicated in the Letter that the Lease was not in effect unless the money was paid to him, stating, “The lease is not in effect unless the above amount is paid by August 9, 2013.” He further stated that “[f|or the lease to take effect,” certain items, including keys, alarm codes, and other documents, had to be delivered to him by August 9, 2013.
Finally, in the Letter, Aronovitz advised Long that if she did not “implement the lease,” she would have to “immediately enter negotiations to sell the business to [him] or immediately vacate the property.” Aronovitz closed by telling Long that if he did not receive a prompt response, he would “have no choice but to proceed with implementing a summary process eviction proceeding.”
On August 7, 2013, SLI, through its attorney, responded to Aronovitz’s letter in writing, representing that it did not have $26,088.00 and could not meet Aronovitz’s demands. It offered to “continue in possession as a tenant-at-will paying $5,070 per month as well as $34.67% of the taxes, common area costs etc. as outlined in the lease dated September 28,2011.” On August 14, Aronovitz caused a 14-day notice to quit to be served upon SU, and the underlying summary process action followed.
Both parties demanded summary judgment, and the motion judge determined that the Lease went into effect when the Trust defaulted and the Deed in lieu was recorded. He held that pursuant to the terms of the Lease, Aronovitz had the option to terminate the Lease, but did not exercise this option by sending the July 30,2013 letter. *59 For these reasons, he ultimately found that, as a matter of law, Aronovitz was entitled to summary judgment for possession and for rent and other charges, as specified in the Lease. An award of $40,100.00, plus interest and costs, was made.
The interpretation of a written contract is a question of law. See Roberts Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973); Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass. App. Ct. 162, 172 (1997). In interpreting a contract, the court must ‘give effect to the parties’ intentions and construe the language to give it reasonable meaning wherever possible.’ Baybank Middlesex v. 1200 Beacon Properties, Inc., 760 F. Supp. 957, 963 (D. Mass. 1991). A contract ‘must also be interpreted as a whole and effect must be given to all of its provisions in order to effectuate its overall purpose.’ Ibid.
Brillante v. R. W Granger & Sons, Inc., 55 Mass. App. Ct. 542, 548 (2002).
Giving effect to the parties’ intentions as expressed in the unambiguous language of their agreement, we conclude that the Lease clearly provided that it was “conditional” and that if he took back ownership of the Property, Aronovitz retained the option to consider the Lease “as having not become effective.” The motion judge correctly identified the critical issue: whether Aronovitz, as a matter of law, exercised his option not to have the Lease take effect. He determined that Aronovitz did not exercise this option because, in the view of the motion judge, Aronovitz did “nothing to put [SU] on notice that the lease was no longer in effect or that it occupied the premises as a tenant at will, or at sufferance.”
Our review of Aronovitz’s actions, however, leads us to a different legal conclusion. Without restating all of the undisputed facts set out above, in the Letter, Aronovitz advised SLI that the Lease “is not in effect” unless $26,088.00 is paid by August 9, 2013. He advised SLI that “[f]or the lease to take effect,” SLI had to defiver certain items to him by that same date. Additionally, Aronovitz directed SLI to respond to him by meeting his requirements and thereby implementing the Lease, or by selling him the liquor business, or by immediately vacating the Leased Premises. SLI responded by stating that it could not meet Aronovitz’s requirements. In considering these facts, the court must give effect to the parties’ intentions as expressed in the Lease and in the Letter. Doing so, we find, as a matter of law, that Aronovitz did indeed exercise his option not to implement the conditional Lease and, therefore, the Lease between him and SLI never came into effect.
This ruling, however, does not affect the motion judge’s determination that Aronovitz was entitled to possession of the Leased Premises. Without an agreement, there was no privity between SLI and Aronovitz. After Aronovitz regained ownership of the Property, SLI immediately had only naked possession of the Leased Premises, and was a tenant at sufferance. No particular form of notice is required to evict a tenant at sufferance, and SLI knew that Aronovitz had regained ownership of the Property through the Letter. The notice to quit subsequently given to SLI alerted it that Aronovitz demanded possession. See Lowell Hous. Auth. v. Save-Mar Furniture Stores, Inc., 346 Mass. 426, 430-431 (1963).
With regard to the issue of damages, under Massachusetts law, a tenant at sufferance in possession of land is liable for “rent” for the time it occupies the premises and deprives the owner of the use of its property. See G.L.c. 186, §3. Rent has been *60 construed as the fair market value of a tenant at sufferance’s use and occupancy of the premises. The finder of fact must determine what the use and occupation of the property were reasonably worth. This value may be more or less than a prior contract rent, and may involve consideration of a number of factors. Ultimately, this presents a question of fact. Gordon v. Sales, 337 Mass. 35, 37 (1958).
Consequently, the part of the judgment granting possession to Aronovitz is affirmed. The part of the judgment assessing damages is vacated, and the case is returned to the Fitchburg District Court for a trial on the issue of damages, defined as the fair market value of SLI’s use and occupancy of the Leased Premises beginning on July 30,2013, the date Aronovitz regained ownership of the Property.

 The parties’ documents refer to the terms “Estoppel Certificate” and “Estoppel Affidavit” interchangeably.