## ESTATE OF STEPHANIE MOULTON vs. NICHOLAS PUOPOLO & others.[1]

Middlesex. November 4, 2013. - March 14, 2014.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Wrongful Death. Workers' Compensation Act,* Action against employer, Identity of employer. *Governmental Immunity. Practice, Civil,* Wrongful death, Motion to dismiss, Interlocutory appeal, Standing. *Corporation,* Charitable corporation, Director's liability, Board of directors. *Negligence,* Wrongful death, Governmental immunity, Employer, Gross negligence. *Fiduciary. Attorney General.*

Discussion of the exclusive remedy provision of the Workers' Compensation Act, G. L. c. 152, § 24. [482-484]

In a civil action alleging, inter alia, a wrongful death claim pursuant to G. L. c. 229, § 2, brought by the estate of a decedent employee of a charitable corporation, the defendant directors were entitled, by virtue of the doctrine of present execution, to pursue an interlocutory appeal of the denial of their motion to dismiss the complaint. [485-486]

In a civil action brought by the estate of a decedent employee of a charitable corporation against its directors, the judge erred in denying the directors' motion to dismiss claims of wrongful death pursuant to G. L. c. 229, § 2, and for punitive damages, where the directors were an employer immune from liability under the exclusive remedy provision of the Workers' Compensation Act, G. L. c. 152, § 24, in that, to the extent the complaint alleged that the decedent's death arose from the adoption of or failure to adopt corporate policies, their collective action as a board made such conduct possible, irrespective of the votes individually cast; and in that, to the extent the complaint alleged that they had the ability to direct and control the activities of employees and to implement workplace safety, the complaint impliedly alleged that they were acting in the capacity of an employer. [486-491]

In a civil action brought by the estate of a decedent employee of a charitable corporation against its directors, the judge erred in denying the directors' motion to dismiss a claim of breach of a fiduciary duty to the charitable

[1]Philip Todisco, Deborah Wayne, Sam Meas, Maria Dilibero, Jean Staropoli, Elizabeth Gruber, John Ribeiro, Dolores Ivette Kershaw, Robert Baskies, Michelle O'Leary, Betzada Rodriguez, Tony Vaughn, Dianne Argyris, Sarah Bokland Barnat, Dianne Marcina Pinckney, Fran E. Rowan, and Edith Silva, individually and as directors of North Suffolk Mental Health Association, Inc.; and Donald Goff, Nancy McDonnell, DeShawn James Chappell, and the Commonwealth.

corporation, its employees, its clients, and the general public, where, as the decedent's employer, the directors owed no fiduciary duty to the decedent; and where the plaintiff did not have standing to pursue any purported breach of a fiduciary duty to the charitable corporation, its clients, or members of the public [491-494]; further, the complaint contained no allegation of a special relationship that otherwise would give rise to a fiduciary duty between any one individual director and the decedent [494].

CIVIL ACTION commenced in the Superior Court Department on April 15, 2011.

A motion to dismiss was heard by *Douglas H. Wilkins*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John D. Frumer* for Nicholas Puopolo & others.

*John James Regan* (*Barry A. Feinstein & Thomas Hodgkins* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Robert J. Murphy, Peter C. Kober, & William P. Mekrut* for Massachusetts Council of Human Services Providers, Inc., & others.

*John J. Barter* for Professional Liability Foundation, Ltd.

*Carol A. Kelly* for Property Casualty Insurers Association of America.

LENK, J. At the time of her death on January 20, 2011, twenty-five year old Stephanie Moulton was employed as a residential treatment counsellor at North Suffolk Mental Health Association, Inc. (North Suffolk), a charitable corporation that provides mental health and rehabilitation services.[2] While at work at North Suffolk's Revere treatment facility, Moulton was alone with DeShawn James Chappell, one of the facility's residents, when Chappell assaulted Moulton, causing her death.[3]

Several months after her death, Moulton's estate brought a

---

[2]North Suffolk Mental Health Association, Inc. (North Suffolk), has entered into contracts with various agencies of the Commonwealth to provide such services, among them the Department of Mental Health and the Department of Correction. It receives client referrals from these agencies that represent a substantial portion of its over $30 million in annual revenue.

[3]We acknowledge the amicus briefs of Property Casualty Insurers Association of America; Massachusetts Council of Human Services Providers, Inc., Association of Behavioral Health Care, Association for Developmental Dis-

wrongful death action, G. L. c. 229, § 2, in the Superior Court against the directors of North Suffolk (director defendants),[4] two psychiatric consultants who had been involved in Chappell's admission,[5] the Commonwealth, and Chappell.[6] Claiming that the defendants' conduct was "willful, wanton, reckless, malicious and constituted gross negligence," the complaint seeks punitive damages, and separately alleges a breach of fiduciary duty by the director defendants. The gravamen of the complaint against the director defendants is that, as a result of admissions and operating policies that they had effectuated, and others that they had failed to effectuate, those who evaluated clients for residential placement were unaware of Chappell's lengthy history of convictions of violent crimes and his mental health history exhibiting a tendency toward violence. Moreover, as a result of such policies, staff at the facility, such as Moulton, were both unaware of Chappell's history and unequipped to deal with individuals having such a history.

The director defendants moved to dismiss the complaint[7] chiefly on the grounds that, with respect to the wrongful death action,[8] they are immune from suit, as Moulton's employer, under the exclusive remedy provision, G. L. c. 152, § 24, of the Workers' Compensation Act (act) and, with respect to the breach

abilities Providers, Partners HealthCare System, Inc., Community Resources for Justice, and Children's League of Massachusetts; and Professional Liability Foundation, Ltd.

[4]Nicholas Puopolo, Philip Todisco, Deborah Wayne, Sam Meas, Maria Dilibero, Jean Staropoli, Elizabeth Gruber, John Ribeiro, Dolores Ivette Kershaw, Robert Baskies, Michelle O'Leary, Betzada Rodriguez, Tony Vaughn, Dianne Argyris, Sarah Bokland Barnat, Dianne Marcina Pinckney, Fran E. Rowan, and Edith Silva, individually and as directors of North Suffolk.

[5]Donald Goff and Nancy McDonnell.

[6]The plaintiff did not name North Suffolk as a defendant, evidently recognizing that North Suffolk, as Moulton's immediate employer, is immune from suit under the exclusive remedy provision of the Workers' Compensation Act (act), G. L. c. 152, § 24.

[7]The other defendants did not join in the director defendants' motion, and play no part in this appeal.

[8]The complaint was filed by Stephanie Moulton's parents, on behalf of her estate, before they had been appointed by the Probate and Family Court as administrators of her estate. The parties have proceeded as though the estate was properly before the Superior Court throughout the course of the litigation, with the exception of an initial objection by the Commonwealth that subsequently was withdrawn. See *MacDonald* v. *Moore*, 358 Mass. 801, 801 (1970).

of fiduciary duty claim, they owed Moulton no such duty.[9] The director defendants appealed the denial of their motion, and we transferred the case to this court on our own motion.

In addition to determining that the interlocutory appeal is properly before us under the doctrine of present execution, we conclude that the director defendants, acting as Moulton's employer when adopting or failing to adopt the workplace policies at issue, are immune from suit under the exclusive remedy provision of the act for injuries Moulton sustained while acting within the course of her employment. We conclude also that the directors, as Moulton's employer, owed no fiduciary duty to their employee, and any corrective action for an alleged breach of their fiduciary duty to North Suffolk must be sought by the Attorney General. The complaint against the director defendants accordingly must be dismissed.

*Discussion.* 1. *Wrongful death claim.* The complaint asserts that the director defendants were "responsible for setting, overseeing and enforcing policies, standards and criteria governing the screening and selection of [clients] for residence, treatment and services at [North Suffolk] facilities" (the admission policy) and were "responsible for setting, overseeing and enforcing policies, standards and criteria governing the qualifications, staffing and training of [North Suffolk] facilities in light of the conditions, situations and problems posed by its [clients]" (the operating policy). The complaint alleges that if the director defendants had allowed or required a proper examination of prospective clients, and provided access to information in the possession of referring agencies indicating prospective clients' criminal histories and previous violent tendencies, Chappell would not have been deemed an appropriate client for admission to North Suffolk's Revere facility. Further, had North Suffolk employees at that facility been given information about clients' violent backgrounds, and had they been provided adequate training, staffing, and equipment for the appropriate

---

[9]The director defendants claimed also that the complaint should have been dismissed because, due to the partial immunity provisions for charitable corporations under G. L. c. 231, §§ 85K and 85W, the plaintiff has no reasonable likelihood of recovering damages in an amount over $25,000, the threshold amount in dispute required for filing a claim in the Superior Court. See G. L. c. 212, § 3. Given our disposition of the case, we do not reach this claim.

handling of clients with violent criminal histories and violent tendencies, Moulton would not have been left alone with Chappell and she accordingly would not have been killed. Allegedly because of their own conflicts of interest,[10] the director defendants failed to adopt policies that would have appropriately screened and selected clients and adequately provided for workplace safety; the policies they adopted or failed to adopt, due to these conflicts, knowingly increased the risk of harm to employees, clients, and the general public.

The director defendants maintain that they may not be held individually and personally liable in a wrongful death action for injuries sustained by an employee of a charitable corporation in the course of employment where the corporation is not itself liable due to the exclusive remedy provision of the act. Here, North Suffolk is not liable because the wrongful death statute yields to the exclusive remedy provision of the act. See G. L. c. 229, § 2. Otherwise put, in cases in which an employee sues an employer for wrongful death damages, the provisions of that statute preclude "any civil action for wrongful death of an employee who is subject to the provisions of the workers' compensation laws." *Peerless Ins. Co.* v. *Hartford Ins. Co.*, 48 Mass. App. Ct. 551, 554 (2000). Maintaining both that Moulton is an employee subject to the provisions of the act and that the term "employer" encompasses not only North Suffolk, but the director defendants as well, the latter assert that they are as a matter of law immune from this wrongful death action.

a. *Statutory scheme.* Compensation under the act is the exclusive remedy for injuries to an employee suffered in the course of employment, regardless of the wrongfulness of the employer's conduct, *Foley* v. *Polaroid Corp.*, 381 Mass. 545,

---

[10]The complaint states that each of the director defendants "had interests, including personal business, financial and professional interests which conflicted with those of [North Suffolk], its employees and [clients]" and that the director defendants "took actions and set and enforced policies designed and intended to serve their said conflicting interests at the expense of the interests of [North Suffolk], its employees and [clients]."

The plaintiff's surreply to the motion to dismiss, which the motion judge and the parties apparently agreed to treat in essence as part of the complaint, asserts that six of the directors held positions in other organizations, and sets forth those purported positions. It does not indicate how the holding of those positions would give rise to conflicts of interest.

551-552 (1980), or the foreseeability of harm. See *Saab* v. *Massachusetts CVS Pharmacy, LLC*, 452 Mass. 564, 567 (2008) (*Saab*). Enacted in 1911, the act was intended to guarantee that workers would receive payment for any workplace injuries they suffered, regardless of fault; in exchange for accepting the statutory remedies, the worker waives any common-law right to compensation for tort injuries. See St. 1911, c. 751, pt. 1, § 5, and pt. 5, § 1; *Foley* v. *Polaroid Corp.*, *supra* at 548-549. "Unlike damages in torts, compensation under the act 'is by way of relief from inability to earn, or for deprivation of support flowing from, wages theretofore received by the employee.' " *Foley* v. *Polaroid Corp.*, *supra* at 552 n.5, quoting *Ahmed's Case*, 278 Mass. 180, 183 (1932).

The act eliminates piecemeal tort litigation and tort claims by individual workers, which are time-consuming, expensive, and afford no guarantee of compensation. See *Foley* v. *Polaroid Corp.*, *supra* at 548-549. The bargain that is struck by the act provides predictability for both employee and employer, balancing protection for workers with certainty for employers. See *Saab*, *supra* at 567, and cases cited. While insured employers forfeit any defenses they might otherwise have had as to fault, they are protected from suit for workplace injuries, and thereby gain predictability and cost containment in conjunction with such injuries. See *Wentworth* v. *Henry C. Baker Custom Bldg., Ltd.*, 459 Mass. 768, 773 nn.6, 7 (2011); *Correia* v. *Firestone Tire & Rubber Co., Inc.*, 388 Mass. 342, 349-350 (1983).

The so-called exclusivity provision of the act does not permit a covered employee both to recover compensation benefits under the act and to sue her employer to recover for an injury covered by the act. The exclusivity provision "has been the cornerstone of our Workers' Compensation Act. Our exclusivity provision is very broad. The Legislature has had opportunities to narrow its scope, and has not done so." *Berger* v. *H.P. Hood, Inc.*, 416 Mass. 652, 656 (1993). While an employee need not forgo the right to bring common-law tort claims against her employer, and may instead waive any compensation payments under the act, an employee so choosing must notify the employer in writing, at the time of hire, that she does not waive the

common-law right of action.[11] See G. L. c. 152, § 24; *Foley* v. *Polaroid Corp., supra* at 548-549. The plaintiff's complaint makes no allegation that Moulton waived her right to compensation under the act.[12]

So long as the injuries were sustained while the employee was acting in the course of her employment, as the plaintiff alleges happened here, actions for negligence, recklessness, gross negligence, and wilful and wanton misconduct by an employer are precluded by the exclusive remedy provision. See *Saab, supra* at 567-568; *Fredette* v. *Simpson,* 440 Mass. 263, 266 (2003); *Carey* v. *Governors of Kernwood Country Club,* 337 F. Supp. 2d 339, 342 (D. Mass. 2004). See, e.g., *Decker* v. *Black & Decker Mfg. Co.,* 389 Mass. 35, 41 (1983) ("serious and willful misconduct" by employer); *Dean* v. *Raytheon Corp.,* 399 F. Supp. 2d 27, 33 (D. Mass. 2005) (gross negligence); *Sarocco* v. *General Elec. Corp.,* 879 F. Supp. 156, 161 (D. Mass. 1995) (intentional exposure to toxic chemicals). Actions against an employer under the wrongful death statute, G. L. c. 229, § 2, are likewise precluded by the exclusive remedy provision of the act. See *Saab, supra* at 570 n.9, 572; *Peerless Ins. Co.* v. *Hartford Ins. Co., supra.* The plaintiff maintains, however, that the director defendants were not Moulton's employer and thus do not enjoy immunity from suit.

[11]"An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ." G. L. c. 152, § 24.

[12]Citing *Maxwell* v. *AIG Domestic Claims, Inc.,* 460 Mass. 91, 107 (2011), the plaintiff contends that the motion to dismiss properly was denied because the director defendants must prove, as an affirmative defense at the summary judgment stage or at trial, that Moulton waived a right of action under G. L. c. 152, § 24. This argument confounds the burden on the plaintiff to allege, in its complaint, that Moulton waived her right to payment under the act and retained her right to pursue a common-law tort action, with an affirmative defense by the director defendants. The statute provides that, unless explicitly stated otherwise, employees have waived their right to pursue a tort action. G. L. c. 152, § 24. The director defendants thus need not assert as an affirmative defense waiver of Moulton's right to workers' compensation protections and retention of her right to proceed on a tort claim. See *Maxwell* v. *AIG Domestic Claims, Inc., supra* at 104 ("once immunity has been invoked, the burden of overcoming the immunity rests exclusively with the plaintiff").

b. *Doctrine of present execution.* Before considering the merits of the director defendants' claims that, as Moulton's employer, they are immune from suit under the wrongful death statute, we consider first whether the director defendants are entitled, by virtue of the doctrine of present execution, to pursue an interlocutory appeal of the denial of their motion to dismiss. An interlocutory order may be appealed under the doctrine of present execution "if the order will interfere with rights in a way that cannot be remedied on appeal from a final judgment." *Commonwealth* v. *Al Saud,* 459 Mass. 221, 227 n.15 (2011), quoting *Benoit* v. *Frederickson,* 454 Mass. 148, 151-152 (2009). A defendant has the right to an immediate appeal under the doctrine of present execution where protection from the burden of litigation and trial is precisely the right to which it asserts an entitlement. *Kent* v. *Commonwealth,* 437 Mass. 312, 316-317 (2002). See *Brum* v. *Dartmouth,* 428 Mass. 684, 688 (1999), citing *Matthews* v. *Rakiey,* 38 Mass. App. Ct. 490, 493 (1995) (right to immunity from suit "would be 'lost forever' if an order denying it were not appealable until the close of litigation").

The doctrine of present execution requires that the immunity defense be collateral to the rest of the controversy. *Maxwell* v. *AIG Domestic Claims, Inc.,* 460 Mass. 91, 106 n.12 (2011), citing *Elles* v. *Zoning Bd. of Appeals of Quincy,* 450 Mass. 671, 673-674 (2008). The director defendants assert such an immunity. The act " 'requires that participating employees waive their right to sue in tort for work-related injuries [in order to obtain compensation under the act].' . . . In other words, the employer 'obtains an immunity from actions at law by his employees.' " *Saab, supra* at 567, quoting *Murphy* v. *Commissioner of the Dep't of Indus. Accs.,* 415 Mass. 218, 222 (1993), and L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 26.1, at 313 (3d ed. 2003).

"[T]he denial of a motion to dismiss on immunity grounds is always collateral to the rights asserted in the underlying action because it 'is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated.' " *Kent* v. *Commonwealth, supra* at 317, quoting *Mitchell* v. *Forsyth,* 472 U.S. 511, 527-529 (1985). Therefore, regardless of whether the director defendants are correct in their assertion that they are

employers immune from liability under the exclusive remedy provision, interlocutory appeal under the doctrine of present execution is permissible to challenge the denial of that contention. We turn to the director defendants' substantive claims.

c. *Whether the director defendants are "employers" for purposes of the act.* Given the act's exclusive remedy provision, whether the plaintiff's claims for wrongful death, and punitive damages due to gross negligence and willful, wanton, reckless, and malicious conduct, survive the director defendants' motion to dismiss turns on whether the director defendants were Moulton's "employer." See *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 558 (1996), quoting *Foley* v. *Polaroid Corp.*, 381 Mass. 545, 548-549 (1980) ("Common law actions are barred by the exclusivity provision of the workers' compensation act where: 'the plaintiff is shown to be an employee; his condition is shown to be a "personal injury" within the meaning of the [workers'] compensation act; and the injury is shown to have arisen "out of and in the course of . . . employment" ' "). Whether directors of a charitable corporation are "employers" for purposes of the act is a matter of first impression for this court.[13]

Under the act, "employers" may be individuals, corporations, or some combination of those in a joint enterprise. The act defines an "[e]mployer" as:

"an individual, partnership, association, corporation or other legal entity, or any two or more of the foregoing engaged in a joint enterprise, and including the legal representatives of a deceased employer, or the receiver or trustee of an individual, partnership, association, corporation or other legal entity, employing employees subject to this chapter. . . . The word 'employer' shall include both the general employer and special employer in any case where both relationships exist with respect to an employee. The word 'employer' shall not include nonprofit entities, as defined by the Internal Revenue Code, that are exclusively staffed by volunteers.

"A corporation and its subsidiary corporations shall be

---

[13]Although we are concerned here only with directors of charitable corporations, we are unaware of any reason that this analysis would not apply equally to directors of for-profit corporations.

considered as one entity for the purposes of a self-insurance license; provided, however, that such corporation has signed as guarantor to insure payment of claims by its subsidiary corporations."

G. L. c. 152, § 1 (5). Since the definition of employer states explicitly that nonprofit entities exclusively staffed by volunteers[14] are not included in its provisions, the Legislature clearly considered, and intended to include, other nonprofit organizations and entities within the purview of "employers" under the act.

The complaint in essence asserts that the director defendants have individual and personal liability for the plaintiff's injuries, sustained while the plaintiff was acting within the course of her employment, because they voted to adopt and enforce certain workplace policies and client admissions polices, and failed or declined to adopt and enforce other safety policies and staffing and training requirements. Adoption of corporate policies is achieved by a vote of the board of directors as a whole, acting as the corporation, see *Harhen* v. *Brown*, 431 Mass. 838, 844-845 (2000); G. L. c. 156B, § 47 ("Except as reserved to the stockholders . . . , the business of every corporation shall be managed by a board of directors"), and cannot be accomplished in the ordinary course by any individual director. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 562-563 (1997); *Winchell* v. *Plywood Corp.*, 324 Mass. 171, 175-177 (1949); Restatement (Second) of Agency § 14C comment b (1958) ("An individual director . . . has no power of his own to act on the corporation's behalf, but only as one of the body of directors acting as a board"). Cf. *Boston Athletic Ass'n* v. *International Marathons, Inc.*, 392 Mass. 356, 364-365 (1984).

"All corporate power shall be exercised by or under the authority of, and the business and affairs of the corporation shall be managed under the direction of, its board of directors. . . ." G. L. c. 156D, § 8.01 (*b*). A corporation "acts through its board of directors." *Aiello* v. *Aiello*, 447 Mass. 388, 402 (2006). See J.D. Cox & T.L. Hazen, Law of Corporations § 9:6 (3d ed. 2010). See also *Harhen* v. *Brown, supra* at 844

---

[14]It is undisputed that North Suffolk is not exclusively staffed by volunteers.

("as a basic principle of corporate governance, the board of
directors . . . should set the corporation's business policy").
For a charitable corporation organized under G. L. c. 180, "[i]f
a corporation does not have members, any action or vote required
or permitted by [G. L. c. 180] to be taken by members of the
corporation shall be taken by action or vote of the same percent-
age of the directors of the corporation." G. L. c. 180, § 3. Such
decisions are undertaken by a vote of the board of directors as a
whole, acting as the corporation, see *American Discount Corp.*
v. *Kaitz*, 348 Mass. 706, 710 (1965), citing G. L. c. 156, § 25
("board of directors may exercise all the powers of the corpora-
tion"); *Lydia E. Pinkham Med. Co.* v. *Gove*, 305 Mass. 213,
217-218 (1940) (acts of directors are "acts of those who control
and manage the corporation"); *Stoneman* v. *Fox Film Corp.*,
295 Mass. 419, 424-426 (1936); the acts of the board and the
corporation are in this sense one and the same. See *Morse* v.
*Fall River Line Pier, Inc.*, 345 Mass. 681, 682-684 (1963); *Hur-
ley* v. *Ornsteen*, 311 Mass. 477, 480-481 (1942); *Stratton-
Massachusetts Gold Mines Co.* v. *Davis*, 222 Mass. 549, 553
(1916). Stated otherwise, the power of the corporation to act is
lodged in the board of directors acting collectively. See *Harhen*
v. *Brown*, *supra* at 844-845, citing *Bartlett* v. *New York, N.H. &
H.R.R.*, 221 Mass. 530, 532 (1915) (plaintiff must obtain relief
through "corporation itself" by making demand on board of
directors); *Tyler* v. *Odd Fellows' Mut. Relief Ass'n*, 145 Mass.
134, 136 (1887).

The complaint, fairly read, alleges that the director defend-
ants, acting qua directors rather than in any other capacity,[15]
set and enforced misguided and wrongful corporate polices
that resulted in Moulton's death while in the course of her

[15]The complaint does not allege that North Suffolk's bylaws permit the
delegation of authority to individual directors to act for the corporation in set-
ting or implementing corporate policies, nor does it allege that North Suf-
folk's board ever acted, expressly or impliedly, to delegate such authority to
any individual director defendant. Further, the complaint does not allege that
any individual director defendant was acting in a capacity other than that of a
director (e.g., as a corporate officer) at the relevant times. See *Boston Athletic
Ass'n* v. *International Marathons, Inc.*, 392 Mass. 356, 364-365 (1984);
*Boston Young Men's Christian Ass'n* v. *Royal Indem. Co.*, 289 Mass. 391, 395
(1935); *Bisceglia* v. *Bernadine Sisters of the Third Order of St. Francis of
Mass., Inc.*, 29 Mass. App. Ct. 959, 960-961 (1990).

employment. There is no allegation that the directors undertook any action without a formal board meeting or vote, nor is there any allegation that any individual director attempted to usurp the power of the board or misrepresented his or her duties as a representative of North Suffolk. To the extent that the complaint alleges that Moulton's death arose from the adoption of or failure to adopt corporate policies, it alleges conduct by the charitable corporation that could have been occasioned only by the vote of its directors acting collectively as a board. Because the corporation as employer is immune from suit under the act for such conduct, so too are the corporation's directors whose collective action made that conduct possible, irrespective of the votes individually cast.

Moreover, to the extent that the complaint alleges that the director defendants had the ability to direct and control the activities of North Suffolk's employees and to implement workplace safety, the complaint thereby impliedly alleges that the director defendants were acting in the capacity of an employer. The right to exercise direction and control is an important factor in determining the existence of an employer-employee relationship. See *Dias* v. *Boston Med. Assocs., Inc.*, 438 Mass. 317, 322 (2002), quoting Restatement (Second) of Agency § 220 comment d (1958); *Gurry* v. *Cumberland Farms, Inc.*, 406 Mass. 615, 622-623 (1990), citing *Kelly* v. *Rossi*, 395 Mass. 659, 663-664 (1985); Restatement (Second) of Agency, *supra* at § 220. The provision of a safe work environment, further, is the responsibility of the employer. *Massachusetts Highway Dep't* v. *American Fed'n of State, County, & Mun. Employees, Council 93*, 420 Mass. 13, 21 (1995), citing *Longever* v. *Revere Copper & Brass Inc.*, 381 Mass. 221, 223 (1980). See *Carey* v. *Governors of Kernwood Country Club*, 337 F. Supp. 2d 339, 343 (D. Mass. 2004) (board of governors of country club where employee was killed while working was employer under act and immune from wrongful death suit; plaintiffs' claim that board had duty to maintain safe workplace "logically implies the allegation that an employer/employee relationship existed" between board and decedent employee).

The plaintiff nonetheless attempts to draw a distinction between North Suffolk as Moulton's employer and the director

defendants as third parties who may be held individually liable for their tortious acts. It maintains in this regard that the director defendants manipulated North Suffolk's corporate policy for their own purposes, and that in voting on corporate policies and operational procedures, there was a conflict of interest between the votes taken by the director defendants to further their own interests and the corporate purposes of North Suffolk. The contention appears to be that, by acting ultra vires, the director defendants removed themselves from the exclusivity provision of the act and exposed themselves to liability. The contention is unavailing.

Claims for negligence, gross negligence, and even wilful misconduct by the employer, whatever the genesis, are all covered under the exclusive remedy provision of the act. See *Saab, supra* at 569-570; *Doe* v. *Purity Supreme, Inc.*, 422 Mass. 563, 565-566 (1996), and cases cited; *Anzalone* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 119, 121-125 (1988); G. L. c. 152, §§ 26, 28. See, e.g., *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 41 (1983); *Dean* v. *Raytheon Corp.*, 399 F. Supp. 2d 27, 33 (D. Mass. 2005); *Sarocco* v. *General Elec. Corp.*, 879 F. Supp. 156 (D. Mass. 1995). There has been no exception recognized for acts arising from self-dealing or self-interest. To the contrary, compensation is doubled for acts of wilful misconduct. G. L. c. 152, § 28. Hence, even if the allegations of a conflict of interest in the complaint had been pleaded adequately, see *infra*, the wrongful death claim against these defendants should have been dismissed.

Given the foregoing, we conclude that the director defendants were Moulton's employer for purposes of the exclusivity provision of the act.[16] As Moulton's employer, the director defend-

[16]We do not address those situations, not alleged here, where a director of a charitable corporation is said to act both as a director and also as a coemployee of an injured employee. While a coemployee acting "within the scope of employment" to further the interests of the employer is protected by the exclusive remedy provision to the same extent as an employer, *Anzalone* v. *Massachusetts Bay Transp. Auth.*, 403 Mass. 119, 124-125 (1988), an injured employee is not precluded from receiving workers' compensation payments and also recovering damages from a coemployee who committed an intentional tort that "was in no way within the scope of employment furthering the interests of the employer." *Id.* at 124, quoting *O'Connell* v. *Chasdi*, 400 Mass. 686, 690 (1987). See G. L. c. 152, § 15.

ants are therefore immune from suit for workplace injuries sustained due to actions taken by the board.[17]

2. *Breach of fiduciary duty.*[18] The complaint also alleges a breach of fiduciary duty by the director defendants to North Suffolk, its employees, its clients, and the general public. The complaint states that the director defendants committed a breach of their fiduciary duty to North Suffolk "of reasonably protecting the interests of the corporation, including but not limited to the safety of employees and clients of [North Suffolk] facilities and the general public with respect to its clients." According to the facts set forth in the complaint, taken as true for the purposes of a motion to dismiss, each director defendant knew that North Suffolk accepted clients from the Department of Mental Health and the Department of Correction, and that such referrals were likely to include individuals with violent criminal histories. Each director defendant knew that it was in the interests of North Suffolk and its employees and clients, as well as the public, "to be aware of such violent or criminal histories and take appropriate measures." Each director defendant, individually and knowingly, took actions and made decisions that served their conflicting "personal business, financial and profes-

[17]We note in this regard that recognition of such immunity from suit is consistent with public policy as to charitable corporations. See, e.g., *Keene* v. *Brigham & Women's Hosp., Inc.*, 439 Mass. 223, 238 & n.25 (2003), and cases cited; *English* v. *New England Med. Ctr., Inc.*, 405 Mass. 423, 429 (1989), cert. denied, 493 U.S. 1056 (1990), quoting *St. Clair* v. *Trustees of Boston Univ.*, 25 Mass. App. Ct. 662, 666 (1988). Cf. *Weaver* v. *Wood*, 425 Mass. 270, 276-277 (1997), cert. denied, 522 U.S. 1049 (1998). Exposing corporate directors to personal liability for claimed injuries to employees, where the corporation is not itself liable under the exclusivity provision of the act, might well discourage well-qualified individuals from serving as directors of charitable organizations attempting to further the public interest. Cf. G. L. c. 180, § 6C (director of corporation acting in good faith and in compliance with this section not liable for performance of duties).

[18]An interlocutory appeal of the denial of a motion to dismiss a claim for breach of fiduciary duty, standing alone, generally would not be appropriately before this court. Here, however, the issue has been briefed in detail by both parties, and is before us in conjunction with the wrongful death claim properly before us under the doctrine of present execution. Moreover, our holding on the director defendants' status as Moulton's employer is intertwined with, and dispositive of, the claim for breach of fiduciary duty against the directors as a board. Therefore, we consider the issue.

sional interests" at the expense of the interests of North Suffolk, its employees, clients, and the public.[19]

The director defendants contend that their motion to dismiss should have been allowed because, in addition to the plaintiff's failure to set forth in the complaint pertinent allegations that meet the standard set forth in *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008),[20] an employer generally does not owe a fiduciary duty to an employee; there are no allegations of a special relationship that otherwise would give rise to a fiduciary duty between any one individual director and Moulton; and the plaintiff does not have standing to pursue any purported breach of fiduciary duty by the directors against North Suffolk, its clients, or members of the public. We agree.

a. *Fiduciary duties of the director defendants as a board.* A fiduciary relationship is one founded on the trust and confidence reposed by one party in the integrity and fidelity of another. See *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen.*, 443 Mass. 837, 853-855 (2005), and cases cited. To establish a breach of fiduciary duty, there must be a duty owed to the plaintiff by the defendant and injury to the plaintiff proximately caused by the breach. *Zimmerman* v. *Bogoff*, 402 Mass. 650, 660 (1988). Directors of a corporation stand in a fiduciary relationship to that corporation and have a duty to protect its interests "above every other obligation." *American Discount*

---

[19]Whatever the nature of these conflicts, see note 10, *supra*, the complaint alleges merely that one or more of the director defendants has a conflict of interest and that the director defendants adopted or failed to adopt policies and cast their votes against the interests of North Suffolk, due to their own conflicts of interest. At the hearing on the motion to dismiss, plaintiff's counsel acknowledged that the complaint did not include any allegations of specific conflicts, and stated that "that's a matter for discovery at this point." Counsel conceded that the allegations in the plaintiff's reply memorandum (which asserts certain outside positions held by six of the director defendants) "are simply an example of a couple of the other interests that several of the board members have. . . . Whether any of those constitute a conflict as such or whether it was acted on as a conflict, the truth is today, I don't know." Absent any factual allegations plausibly suggesting an entitlement to relief, we agree with the director defendants that this is mere speculation that does not satisfy the requisite standard set forth in *Iannacchino* v. *Ford Motor Co.*, 451 Mass. 623, 636 (2008) (to survive motion to dismiss, complaint must present factual "allegations plausibly suggesting" entitlement to relief).

[20]See note 19, *supra*.

*Corp.* v. *Kaitz,* 348 Mass. 706, 711 (1965). See *Geller* v. *Allied-Lyons PLC,* 42 Mass. App. Ct. 120, 122-123 (1997), citing *Colonial Operating Co.* v. *Poorvu,* 306 Mass. 104, 107-108 (1940) (director has duty of loyalty to corporation and must act in good faith to promote its welfare and without promoting personal gain over corporate interests). An employer, however, owes no fiduciary duty to an employee. *Sbrogna* v. *Worcester Stamped Metal Co.,* 354 Mass. 17, 20 (1968). Thus, as Moulton's employer, the director defendants, acting as a board, had no fiduciary duty to her.

We turn next to the asserted breach of fiduciary duties to North Suffolk, its clients, and the general public. Even had the complaint contained allegations of harm to North Suffolk itself, to any particular North Suffolk client, or to the general public from the director defendants' adoption of the workplace policies, the plaintiff does not have standing to bring an action to protect the public interest in the efficient and lawful operation of a charitable corporation, or to correct any abuse or error in the administration of that corporation. See G. L. c. 12, § 8; *Bello* v. *South Shore Hosp.,* 384 Mass. 770, 779-780 (1981), quoting *Dillaway* v. *Burton,* 256 Mass. 568, 573 (1926) ("[I]t is the exclusive function of the Attorney General to correct abuses in the administration of a public charity by the institution of proper proceedings [under G. L. c. 12, § 8]. It is [her] duty to see that the public interests are protected and to proceed in the prosecution or to decline so to proceed as those interests may require"). If the director defendants knowingly entered into a plan to foist inappropriate clients upon North Suffolk for their own benefit, the pursuit of a remedy for any such asserted breach of fiduciary duty to North Suffolk would lie with the Attorney General, and not the plaintiff. See *Weaver* v. *Wood,* 425 Mass. 270, 275 (1997), cert. denied, 522 U.S. 1049 (1998), quoting G. L. c. 12, § 8 ("When a trust is charitable, and is created not to benefit one or more individuals but is devoted to purposes that are beneficial to a broader community, the Legislature has determined that the Attorney General is responsible for ensuring that its charitable funds are used in accordance with the donor's wishes; '[t]he attorney general shall enforce the due application of funds given or appropriated to public

charities within the commonwealth and prevent breaches of trust in the administration thereof' ").

b. *Fiduciary duty of individual directors.* Absent any duty owed by the director defendants as employer to Moulton as employee, the only basis for any asserted duty by an individual director to Moulton would be a "special relationship." See *Locator Servs. Group, Ltd.* v. *Treasurer & Receiver Gen., supra.* The complaint, however, contains no allegations of a special relationship between Moulton and any one of the individual director defendants, or indeed of any interactions between Moulton and a specific director defendant, that would give rise to a fiduciary duty by that individual director defendant toward Moulton.

As stated, the only allegation concerning any individual director defendant is the undifferentiated assertion that they "had interests, including personal business, financial and professional interests which conflicted with those of [North Suffolk], its employees and [clients]," and that the director defendants "took actions and set and enforced policies designed and intended to serve their said conflicting interests at the expense of the interests of [North Suffolk], its employees and [clients]." Thus, the complaint does not allege acts " 'plausibly suggesting (not merely consistent with)' an entitlement to relief," *Iannacchino* v. *Ford Motor Co., supra,* quoting Fed. R. Civ. P. 8(a)(2), and the claims for breach of fiduciary duty accordingly must be dismissed.

*Conclusion.* Because we conclude that the director defendants acted as Moulton's employer in voting to adopt or in failing to adopt the corporate policies at issue, under the exclusive remedy provision of the Workers' Compensation Act they are immune from suit for injuries Moulton sustained while acting within the course of her employment. Their motion to dismiss the plaintiff's claims for wrongful death and for punitive damages should have been allowed. Since, on the facts alleged in the complaint, the director defendants owed no fiduciary duty to Moulton, and the Attorney General has exclusive authority to bring claims for inappropriate administration of a charitable corporation, the claims for breach of fiduciary duty also should have been dismissed. The matter is remanded to the Superior Court where

the order denying the director defendants' motion to dismiss shall be vacated and set aside, and judgment shall enter for the director defendants on all claims.

*So ordered.*