DAKIN vs. OSI RESTAURANT PARTNERS, LLC, 100 Mass. App. Ct. 92

 
 JAMES Z. DAKIN vs. OSI RESTAURANT PARTNERS, LLC, & others. [Note 1]

100 Mass. App. Ct. 92
 May 12, 2021 - August 2, 2021

Court Below: Superior Court, Plymouth County
Present: Green, C.J., Blake, & Kinder, JJ.

 

Negligence, Joint enterprise. Workers' Compensation Act, Action against third person, Exclusivity provision. Evidence, Joint enterprise. Joint Enterprise. Practice, Civil, Judgment notwithstanding verdict.

In a negligence action arising from injuries the plaintiff suffered while working at a restaurant, for which he had received workers' compensation benefits paid from an insurance policy that listed as insureds several business entities, including the two defendants, the Superior Court judge properly denied the plaintiff's motion for judgment notwithstanding the verdict, where there was sufficient evidence of the defendant entities' interrelated management, financial interdependence, and connectivity for the jury to find that they were engaged in a joint enterprise or joint venture rendering them a single employer for purposes of precluding the plaintiff's claims under the exclusivity provision of the workers' compensation act. [95-101]

CIVIL ACTION commenced in the Superior Court Department on August 27, 2015.

 The case was tried before Gregg J. Pasquale, J., and a motion for judgment notwithstanding the verdict or for a new trial was considered by him.

Scott E. Charnas for the plaintiff.

 Christopher A. Callanan for OSI Restaurant Partners, LLC, & another.

 BLAKE, J. The Massachusetts Workers' Compensation Act (act) provides that the acceptance of workers' compensation benefits by an injured worker is deemed a release of any and all claims the employee might have against the employer. See G. L. c. 152, §§ 1, 23. This, however, does not prohibit an injured worker from 

 Page 93 

bringing a claim against other persons or entities who may be legally liable for the injury. See G. L. c. 152, § 15. The question presented is whether the judge properly denied the plaintiff's motion for judgment notwithstanding the verdict (judgment n.o.v.) where, as here, there was sufficient evidence for the jury to find that certain entities were engaged in a joint enterprise or joint venture rendering them a single employer for purposes of the act. See G. L. c. 152, § 1 (5). We conclude that a reasonable jury could have found that they were and therefore affirm the denial of the plaintiff's motion for judgment n.o.v. or in the alternative new trial, and the judgment entered in favor of the defendants.

 Background. 1. The corporate structure. Bloomin' Brands, Inc. (Bloomin' Brands), is an umbrella entity that operates four restaurant concepts, including Outback Steakhouse. [Note 2] At issue here are three entities within Bloomin' Brands: OSI Restaurant Partners, LLC (OSI), Outback Steakhouse of Florida, LLC (Outback), and OS Restaurant Services, LLC (OS Restaurant). These entities operate pursuant to operating agreements which establish that OSI owns, manages, and controls Outback, which in turn owns, manages, and controls OS Restaurant. The operating agreements were signed by the chief legal officer of Bloomin' Brands, on behalf of each entity.

 OSI is the main operating company of Bloomin' Brands. It holds the ownership interest in all of the Bloomin' Brands operating concept entities (the restaurants). As relevant here, Outback owns the majority of the domestic Outback restaurants, including the intellectual property (such as trademarks and recipes), and the restaurant equipment. It is also the tenant in the commercial leases for each restaurant property.

 Pursuant to the operating agreement between OSI and Outback, OSI is the sole member of Outback. The management, operation, and policy of Outback is exclusively vested in OSI. In other words, OSI has the power to make executive decisions for Outback. Additionally, OSI provided the initial capital contribution to Outback and may, but is not required to, infuse additional capital. This operating agreement also allocates any profits and losses of Outback to OSI. Finally, OSI exclusively determines 

 Page 94 

when and if distributions are made to it. [Note 3]

 OS Restaurant is an in-house payroll processing company that handles all administrative functions for the nonmanagement employees of the restaurants. [Note 4] Pursuant to the operating agreement between OS Restaurant and Outback, Outback is the sole member of OS Restaurant and the management, operation, and policy of OS Restaurant is vested exclusively in Outback. Outback provided the initial capital contribution for OS Restaurant and may, but is not required to, contribute additional capital. The operating agreement allocates any profits and losses of OS Restaurant to Outback.

 Pursuant to the amended and restated master employment services agreement (services agreement) between OS Restaurant, Outback, and other entities owned by OSI, OS Restaurant is obligated to serve as the sole provider of nonmanagement restaurant personnel to OSI restaurants, including the Hanover Outback Steakhouse where the plaintiff worked. [Note 5] OS Restaurant agreed "not to hold itself out to the public as an employee leasing organization, personnel service, or contract labor firm." In exchange, the restaurants agreed to pay OS Restaurant fees for its services. The services agreement, like the operating agreements, was signed by the chief legal officer of the entire enterprise, on behalf of all the OSI entities.

 2. The plaintiff's complaint. The plaintiff, James Z. Dakin, was injured while working as a prep cook at an Outback Steakhouse restaurant in Hanover, Massachusetts. He filed a claim for and received workers' compensation benefits, paid from an insurance policy that listed OSI, Outback, and OS Restaurant, among others, as the insureds. As relevant here, the plaintiff filed a complaint in the Superior Court against OSI and Outback alleging negligence. The defendants answered contending, inter alia, that the plaintiff's claims were barred by the act. The jury, in response to special questions, found that OSI and Outback were both engaged in a joint enterprise

 Page 95 

 or joint venture with OS Restaurant. [Note 6] As a result, the plaintiff's claims were barred by the act and judgment entered for the defendants. The plaintiff filed a motion for judgment n.o.v. or in the alternative a new trial (motion). The judge denied the motion and this appeal followed.

 Discussion. 1. Motion for judgment n.o.v. The denial of a motion for judgment n.o.v. presents a question of law reviewed under the same standard used by the trial judge. See O'Brien v. Pearson, 449 Mass. 377, 383 (2007). We view the evidence in the light most favorable to the nonmoving party, "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence." DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 762 (2007), quoting Tosti v. Ayik, 394 Mass. 482, 494 (1985). "The verdict will be upheld if it may be determined that 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [nonmovant].'" Sullivan v. Five Acres Realty Trust, 487 Mass. 64, 68 (2021), quoting McAvoy v. Shufrin, 401 Mass. 593, 596 (1988). A reasonable inference, however, "must be based on probabilities rather than possibilities and cannot be the result of mere speculation and conjecture" (citation omitted). Reading Co-Op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 556 (2013). [Note 7]

 The plaintiff contends that the jury's verdict was not supported by sufficient evidence, was against the weight of the evidence, and reflected a misunderstanding of the law. He argues that the evidence merely established a "run-of-the-mill" parent-subsidiary corporate relationship and did not establish that Outback and OSI had an intent to associate as and were engaged in a joint venture with OS Restaurant. Therefore, he claims that the judge erred in denying his motion.

 The defendants counter that they met their burden to prove that the entities were engaged in a joint venture and thus are a single employer for purposes of the act. See Gurry v. Cumberland Farms, Inc., 406 Mass. 615, 623-625 (1990). See also Whitman's Case, 80 Mass. App. Ct. 348, 355 n.6 (2011) ("[J]oint employment

 Page 96 

 may come about simply because of the joint character of the business arrangement between two employers. The most obvious illustration is that of a classic joint venture" [citation omitted]). For the reasons that follow, we agree with the defendants.

 2. The act. Originally enacted in 1911, the act guarantees workers certain benefits as the exclusive remedy for injuries they suffer in the course of employment, regardless of the wrongfulness of the employer's conduct. See Estate of Moulton v. Puopolo, 467 Mass. 478, 482-483 (2014), citing St. 1911, c. 751, pt. 1, § 5, and pt. 5, § 1. See also Camargo's Case, 479 Mass. 492, 494 (2018) ("General Laws c. 152 requires employers to provide workers' compensation to employees who are injured within the scope of their employment"). The act "was intended to guarantee that workers would receive payment for any workplace injuries they suffered, regardless of fault; in exchange for accepting the statutory remedies, the worker waives any common-law right to compensation for tort injuries." Estate of Moulton, supra at 483. Put another way, an injured employee's acceptance of workers' compensation benefits "shall constitute a release to the insured [employer] of all claims" thereby prohibiting the employee from bringing suit against the employer for their injuries. G. L. c. 152, § 23. See, e.g., Saab v. Massachusetts CVS Pharmacy, LLC, 452 Mass. 564, 567 (2008), quoting Barrett v. Rodgers, 408 Mass. 614, 616 (1990) ("employees [who accept workers' compensation benefits] get 'guaranteed right of recovery,' but they are in turn barred from 'recovering against their employers for injuries received on the job'").

 Acceptance of benefits, however, does not prohibit the employee from bringing a claim against other persons or entities "other than the insured" who are legally liable for the injury. G. L. c. 152, § 15. The "insured" is defined as "an employer who has provided by insurance for the payment to his employees by an insurer of the compensation provided for by [the act]." G. L. c. 152, § 1 (6). "Under the act, 'employers' may be individuals, corporations, or some combination of those in a joint enterprise." Estate of Moulton, 467 Mass. at 486. See G. L. c. 152, § 1 (5). The act does not define the term joint enterprise. See G. L. c. 152, § 1.

 3. Joint venture/joint enterprise. Whether the act's exclusivity remedy precludes the plaintiff's claims turns on whether the entities engaged in a joint venture or joint enterprise such that they constitute a single employer under the act. Although not defined in the act, the term "joint enterprise" has been interpreted

 Page 97 

 as synonymous with the term joint venture. [Note 8] See, e.g., Gurry, 406 Mass. at 622-625. And, a joint venture "resembles a partnership and has many of its attributes." Mendelsohn v. Leather Mfg. Corp., 326 Mass. 226, 233 (1950). It is "ordinarily, although not necessarily, limited to a single enterprise," and "the relationship of joint [venturers] is a matter of intent [that] arises only when they intend to associate themselves as such." Cardullo v. Landau, 329 Mass. 5, 8 (1952).

 Whether two or more corporate entities are engaged in a joint venture so as to constitute a single employer for purposes of the act constitutes a mixed question of law and fact. Gurry, 406 Mass. at 622. "The mere fact of common management and shareholders among related corporate entities" in and of itself is not sufficient to a find a "'joint venture' relationship that renders the corporations a 'single employer'" under the act. Id. at 624. An agreement to enter a joint venture need not be reduced to a writing. See Massachusetts Prop. Ins. Underwriting Ass'n v. Georgaklis, 77 Mass. App. Ct. 358, 362 (2010).

 Proof of an intent to associate to constitute a joint venture may include evidence of (1) an agreement among participants to associate for joint profit; (2) contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (3) a joint property interest in the subject matter of the venture; (4) a right to participate in the control of the venture; (5) an expectation of profit; (6) a right to share in profits; (7) an express or implied duty to share in the losses; and (8) a limitation to a single undertaking or small number of enterprises. Gurry, 406 Mass. at 623-624 (referred to as factors); Shain Inv. Co. v. Cohen, 15 Mass. App. Ct. 4, 9 (1982) (Shain) (referred to as considerations). [Note 9] These so-called Gurry factors/Shain considerations serve as a "pragmatic checklist" which guide our analysis. Shain, supra. No single factor or consideration is necessary or determinative, and no minimum number is required to determine the existence of a joint venture. [Note 10] See id. at 8 ("It may not be possible to identify criteria for the existence of a joint venture with any definiteness"). "The key requirement in finding [a joint venture's] existence is an intent

 Page 98 

 [by the parties] to associate" (emphasis added). Gurry, supra, at 623.

 As discussed in detail infra, a reasonable jury could have found that the evidence demonstrated the existence of a joint venture where a series of interrelated entities engaged in a common undertaking to manage and operate the Bloomin' Brands restaurant concepts, including the Hanover Outback Steakhouse where the plaintiff worked.

 Evidence of intent to associate. In order to assess whether the jury could have reasonably found that the parties had the requisite intent to associate, we review the evidence through the lens of the Gurry factors/Shain considerations discussed supra. We begin with the operating and service agreements, which demonstrate OSI, Outback, and OS Restaurant are separate limited liability companies that are inextricably linked by and through these agreements. Read together, a reasonable jury could find that the agreements manifest an intent to associate for joint profit.

 The evidence at trial indicated that Bloomin' Brands organized its corporate structure through the creation of a "closed system," designed to ensure consistent operational models for each Outback restaurant nationwide. This closed system is evidenced by, among other things, OS Restaurant's agreement to exclusively provide Outback with restaurant employees. It is also reflected in the manner in which employees are trained. Specifically, OSI created and distributed an employee policy handbook that outlined the policies and procedures applicable to all of its employees. In addition, Outback created and distributed an employee training handbook for restaurant workers, that cross-referenced the OSI handbook. As part of their training, OS Restaurant employees working in Outback restaurants were required to review both handbooks and complete online training provided by OSI.

 Moreover, there was also evidence that the entities shared professional services including legal, finance, tax, and treasury services. And, in order to maximize purchasing power, the entities used a single contract to purchase potatoes, meat, and other goods for all its restaurant concepts, including Outback. OSI also provided employee benefits (including health and dental insurance) to all eligible employees for all restaurant concepts, and a "comp card" that allowed employees to receive discounts at all Bloomin' Brands restaurants. OSI also created and administered a customer reward loyalty program applicable to all the

 Page 99 

 restaurant concepts, including Outback. Finally, the evidence included a joint workers' compensation insurance policy, purchased by OSI, covering both Outback and OS Restaurant. Thus a jury would have been warranted in finding that the defendants agreed to associate for profit.

 As to whether the defendants established a joint property interest, the record is replete with evidence of the financial interdependence of the entities. Each parent company contributed the initial capital to establish each subsidiary, with the ability to provide additional capital, and each enjoys the exclusive right to declare and retain any distributions. Moreover, Outback owns all of the restaurant assets, and OSI, as the sole member of Outback, shares ownership of those assets. OS Restaurant agreed to exclusively provide restaurant employees to Outback and other OSI restaurants for a fee. Put another way, OS Restaurant generates fees only by providing restaurant employees to restaurants controlled by OSI, including Outback; significantly Outback cannot operate without the employees leased from OS Restaurant. From this, the jury could find or infer a joint property interest in the subject matter of the venture -- the operation of the restaurant concepts. Contrast Petricca Dev. Ltd. Partnership v. Pioneer Dev. Co., 214 F.3d 216 (1st Cir. 2000) (no joint property interest where neither party had acquired joint property interest in subject land of proposed venture and land remained in original party's name).

 To constitute a joint venture, some degree of mutual participation in the control or management of the entities amounting to more than being a mere spectator is required. Shain, 15 Mass. App. Ct. at 9-10. The evidence proved that the exclusive management, operation, and policy of each company is vested in the member. More specifically, OSI has the exclusive "management, operation, and policy" of Outback, which in turn has the exclusive "management, operation, and policy" of OS Restaurant. A reasonable inference from such evidence is that the defendants were "more than a spectator in the enterprise," each with a controlling hand in some aspect of the operation of the Outback restaurants. Judge v. Gallagher, 17 Mass. App. Ct. 636, 640 (1984), quoting Shain, supra at 10. Contrast Shinberg v. Garfinkle, 361 Mass. 109, 114 (1972) (arrangement "in some respects resemble[d] a joint venture" but plaintiff had no right to control or manage investment). Indeed, the jury could have found that the defendants established "'[a] right of mutual control or management of the enterprise,' . . . an essential element of joint venture" (citation omitted). Shain, supra at 9.

 Page 100 

 The "pragmatic checklist" of the characteristics of a joint venture includes three aspects of profits and losses. Id. A jury could have found that the structure of Bloomin' Brands was designed to promote efficiency and profitability, thus evincing an expectation of profit. As noted supra, the entities shared legal, accounting, and human resource services, as well as common purchasing, employee benefits, and customer reward programs. By centralizing these types of operations, a jury could infer that the entities were structured to expect and maximize profits.

 Separate and apart from the expectation of profit is the right to share profits and losses. Shain, supra at 9. Here, the plain language of the operating agreements demonstrated that the profits and losses of OS Restaurant were allocated to Outback and the profits and losses of Outback were allocated to OSI, thus demonstrating that profits and losses were shared among the entities. [Note 11] Moreover, because of the corporate structure, described supra, the success or failure of one entity impacted the overall profitability of the other entities because each subsidiary generated profit by its interaction with the other entities within the closed system. The creation of this wholly interdependent enterprise, where the separate entities discharged discrete functions but the enterprise as a whole could not be conducted without the active participation of all three, is further evidence that would support a jury's finding that the entities' intended to share profits and losses.

 Next, a joint venture is "ordinarily, although not necessarily, limited to a single enterprise." Shain, 15 Mass. App. Ct. at 7. The jury heard evidence about the creation of each entity for the singular purpose of operating the four restaurant concepts under the umbrella of the Bloomin' Brands. The jury could reasonably have determined that this small number of enterprises was created for the single undertaking of successfully operating the restaurant concepts.

 Finally, the parties, at oral argument, agreed that the defendants established that the entities contributed money, property, effort, knowledge, and skill to the common undertaking of operating the restaurant concepts. See Shain, 15 Mass. App. Ct. at 9. We agree 

 Page 101 

that the jury were warranted in so finding.

 Conclusion. [Note 12] The interrelated management, financial interdependence, and connectivity of the entities, as captured by the Shain considerations/Gurry factors supported the jury's findings that the defendants met their burden to prove "an intent to associate" "so as to render them a single employer under [the act]." See Gurry, 406 Mass. at 623-624; Shain, 15 Mass. App. Ct. at 8-9. [Note 13] See also Sullivan, 487 Mass. at 68; Cristo v. Worcester County Sheriff's Office, 98 Mass. App. Ct. 372, 375-376 (2020). Indeed, although not required, there is ample evidence of each of the Shain considerations/Gurry factors, all of which supported the jury's verdict. Accordingly, there was no error in the denial of the plaintiff's motion for judgment n.o.v. or in the alternative a new trial.

Judgment affirmed.

Order denying motion for judgment notwithstanding verdict or for new trial affirmed.

FOOTNOTES
[Note 1] Outback Steakhouse of Florida, LLC; Bloomin' Brands, Inc.; ITW Food Equipment Group, LLC, doing business as Hobart and as Hobart Service; Strategic Equipment, LLC; and TriMark USA, LLC. This appeal involves only OSI Restaurant Partners, LLC, and Outback Steakhouse of Florida, LLC. 

[Note 2] The other restaurant concepts, each of which is a limited liability company, are Bonefish Grill, LLC, Carrabba's Italian Grill, LLC, and Fleming's Steakhouse. 

[Note 3] That is, OSI can decide whether to reinvest profit in the operation of Outback or whether the profit should be distributed to OSI. 

[Note 4] Another similar but separate entity, OS Management Services handles the payroll functions for management-level employees and so-called home office employees. 

[Note 5] OS Management Services provides management employees to Outback subject to an amended and restated proprietor employment agreement not relevant here. 

[Note 6] This issue was bifurcated by the judge and tried first. Based on the jury's answers to special questions, a second trial on the merits of the plaintiff's negligence claims was not necessary. 

[Note 7] The plaintiff filed a motion for a directed verdict, a prerequisite to filing a motion for judgment n.o.v. See Mass. R. Civ. P. 50 (b), as amended, 428 Mass. 1402 (1998). 

[Note 8] For ease of reading, we use the term joint venture to include the term joint enterprise. 

[Note 9] We note that the judge instructed the jury on the factors to consider in finding the existence or nonexistence of a joint venture between the entities with input from and without objection from either party. 

[Note 10] We use the terms "factor(s)" and "consideration(s)" interchangeably. 

[Note 11] To the extent that the plaintiff argued that profits and losses were not shared because each entity allocated its profits and losses to its parent company, we are not persuaded. The plaintiff has pointed to no Massachusetts workers' compensation case, nor have we found one which holds that allocation of profits to a parent company precludes a finding of joint venture. We express no opinion whether every parent subsidiary relationship where profits are allocated to the parent constitutes a joint venture. 

[Note 12] We also conclude that the judge did not abuse his discretion in denying the plaintiff's alternative requested relief of a new trial. "We review the denial of a motion for a new trial for an abuse of discretion, bearing in mind that a judge should exercise his or her discretion only when the verdict is so greatly against the weight of the evidence as to induce in his [or her] mind the strong belief that it was not due to a careful consideration of the evidence, but that it was the product of bias, misapprehension or prejudice" (citation omitted). Doull v. Foster, 487 Mass. 1, 5 (2021). As discussed supra, the jury was presented with sufficient evidence to reasonably conclude the OSI and Outback entered into a joint venture with OS Restaurant. Accordingly, the judge did not abuse his discretion in denying the plaintiff's motion for a new trial. 

[Note 13] To the extent that the plaintiff alleges that the judge impermissibly ignored evidence favorable to him, this is of no moment as our review requires us to "disregard [evidence] favorable to the moving party." See Cristo v. Worcester County Sheriff's Office, 98 Mass. App. Ct. 372, 375-376 (2020), quoting McCarthy v. Waltham, 76 Mass. App. Ct. 554, 560 (2010). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.